WOODSMOKE RESORTS, INC., *et al.*, Plaintiffs-Appellants, v. THE CITY OF MARSEILLES *et al.*, Defendants-Appellees.

Third District    No. 3—88—0063

Opinion filed September 27, 1988.

Robert Eschbach, of Ottawa, and Daniel Swartzman, of Ettinger, Schoenfield & Katz, Ltd., of Chicago (Rick M. Schoenfield, of counsel), for appellants.

Michael T. Reagan, of Herbolsheimer, Lannon, Henson, Duncan &

Reagan, P.C., of La Salle (Russell J. Hoover and Keith R. Leigh, of counsel), for appellee Spicer, Inc.

Keith R. Leigh, of Seneca, for appellee City of Marseilles.

Russell Hoover and Steven N. Berk, both of Jenner & Block, of Chicago, for appellee Metropolitan Waste Systems, Inc.

JUSTICE WOMBACHER delivered the opinion of the court:

Plaintiffs appeal the trial court's denial of their request for a preliminary injunction and for the trial court's dismissal of their complaint.

In December 1987, Metropolitan Waste, Inc. (Metropolitan), and Spicer, Inc. (Spicer), notified the City of Marseilles, Illinois (Marseilles), they would formally request a site approval of a sanitary landfill on or about January 14, 1988. On January 12, 1988, Woodsmoke Resorts, Inc., William Gastineau, Dave Gilbert, I. Anita Gilbert, William P. Mitchell, and James Mitchell sought a temporary restraining order (TRO) and preliminary injunction to enjoin the defendants, Metropolitan and Spicer, from filing their application for a sanitary landfill site approval; from participating in the public hearing regarding such application; and they also attempted to enjoin Marseilles from conducting the same.

The plaintiffs claimed the following: (1) the additional fees to which Marseilles would be entitled if the landfill ultimately operated on the proposed site created an inherent bias precluding Marseilles from objectively ruling on the application; (2) Marseilles was in fact biased in favor of granting said application; (3) the notice issued plaintiffs was inadequate; and (4) that irreparable harm would result to the plaintiffs, *i.e.*, the value of their property would significantly diminish.

On January 12, 1988, the trial court denied plaintiffs' petition for a TRO. On January 22, 1988, the trial court likewise dismissed their petition for a preliminary injunction and complaint and in so doing held: (1) the plaintiffs had an adequate administrative remedy available which they failed to exhaust; (2) the plaintiffs lacked standing to pursue injunctive relief; and (3) the plaintiffs failed to allege that immediate and irreparable injury would result. We affirm the trial court's denial of their request for a preliminary injunction and its dismissal of their complaint.

Woodsmoke Resorts (Woodsmoke) was a recreational development located near the proposed landfill. About 1,000 people resided and owned property within Woodsmoke. William Gastineau was the presi-

dent of Woodsmoke and owned and resided therein. The remaining plaintiffs owned property within a close proximity to the proposed landfill.

Marseilles annexed this particular property on December 16, 1987. Metropolitan and Spicer were a motivating factor in this annexation. Under the annexation agreement, Marseilles received $50,000 and will receive $1 million upon the Illinois Environmental Protection Agency (EPA) issuing an operating permit. Marseilles had to approve this site prior to the EPA issuing an operating permit. If waste materials are eventually received at this landfill, Marseilles will receive at least $7 million, possibly $8 million. In addition, Marseilles may dispose of all municipally generated waste therein *gratis*. In lieu thereof, Marseilles forfeits its right to establish any special assessment proceeding, taxing district, tax applicable to landfills, and it forfeits its right to enact any regulatory ordinances concerning the landfill, *e.g.*, zoning ordinances, building codes, or subdivision regulations which restrict the use of the site for a sanitary landfill. Also pursuant to the annexation agreement, Marseilles forfeited its rights to regulate in, around, and for the landfill: (a) water pollution, (b) noise pollution, (c) foul and offensive odors, (d) traffic flow, and (e) the amount of a closure bond.

Plaintiffs contend the trial court erred in dismissing their complaint. They claim their complaint stated a valid cause of action to enjoin a "fundamentally unfair sanitary landfill site approval hearing." We disagree. The facts and applicable law do not indicate Marseilles is biased towards granting this site approval. For instance, Marseilles will not realize any additional revenue simply by approving this site. Only after the EPA ultimately issues an operating permit will Marseilles realize any additional revenue. Even though the Marseilles board approves this site, the Pollution Control Board could veto their decision.

Case law confirms that Marseilles is not disqualified from reviewing this application for site approval. An analogous situation occurred in *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 481 N.E.2d 664. There, the Du Page County board (county board) approved a proposal to expand a landfill on land owned by the Du Page County Forest Preserve District (district). The Village of Hanover Park (Hanover Park), which is adjacent to the landfill, and E & E Hauling filed a petition for review of the county board's decision with the Pollution Control Board (PCB), which overturned the county board's order. E & E Hauling operated the landfill. The purpose of approving the landfill was to create a hill for recreational use. The district received royalties from the operator of the landfill. The

county board commissioners and district commissioners were one and the same. The plaintiffs claimed that since the members of the county board were both judge and applicant, and because the district stood to gain increased revenue if the application were approved, it would be unfair for the county board to pass judgment on the same.

■ In *E & E Hauling*, the appellate court reversed the PCB decision, effectively reinstating the county board's order. (116 Ill. App. 3d 586, 451 N.E.2d 555.) Hanover Park claimed on appeal that its due process rights were denied because of the conflict of interest and bias of the county board. The supreme court refuted that contention by stating:

> "[T]he board should not be disqualified as a decision-maker simply because revenues were to be received by the county. County boards and other governmental agencies routinely make decisions that affect their revenues. They are public service bodies that must be deemed to have made decisions for the welfare of their governmental units and their constituents. Their members are subject to public disapproval; elected members can be turned out of office and appointed members replaced. Public officials should be considered to act without bias. *Cf. Memphis Light, Gas & Water Division v. Craft* (1978), 436 U.S. 1, 56 L. Ed. 2d 30, 98 S. Ct. 1554." *E & E Hauling*, 107 Ill. 2d at 42.

■ Even though Marseilles could realize more annual income than would the district in *E & E Hauling*, it is not fundamentally unfair for Marseilles to review this site approval application. Marseilles does not possess any more bias than the district. For instance, Marseilles does not own the landfill property, unlike the district, which did. Technically, Marseilles, or its board members, will not realize and enjoy the additional potential revenues or pecuniary benefit. It is the community at large which stands to gain or lose from Marseilles approving or disapproving this site. Furthermore, the Marseilles board members are not both judge and applicant, unlike the members of the Du Page County board.

The supreme court elaborated in *E & E Hauling* that "the rights of third parties are adequately recognized and secured" by the hearing and review procedures prescribed by the Act (Environmental Protection Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1001 *et seq.*)). *E & E Hauling*, 107 Ill. 2d at 41.

The plaintiffs argue that there is more bias in this case because there is $8 million at stake here compared to $6,120,000 in *E & E Hauling*. It is not the difference in money or benefit that established a bias or predisposition to act in a certain way.

■ The plaintiffs also claim that the annexation of the property, along with the respective relinquishment of various rights, serves as evidence of adjudicative prejudgment by Marseilles. The supreme court also addressed this issue in *E & E Hauling*. The district commissioners, acting as such, passed ordinances expressly approving the landfill expansion. They were parties to the contract for operation of the landfill and applied for site approval. The supreme court in rejecting the claim of a disqualifying prejudgment stated:

"The village next claims that the hearing was unfair because both the county and the district had earlier approved the landfill by ordinance. The village thus is claiming a type of bias that has been called 'prejudgment of adjudicative facts.' (See K. Davis, 3 Administrative Law Treatise sec. 19:4 (2d ed. 1980).) But the ordinances were simply a preliminary to the submission of the question of a permit to the Agency. Subsequently, the Act was amended and the board was charged with the responsibility of deciding whether to approve the landfill's expansion. The board was required to find that the six standards for approval under the amended act were satisfied. It cannot be said that the board prejudged the adjudicative facts, *i.e.*, the six criteria. This conclusion is supported by the line of decisions that there is no inherent bias created when an administrative body is charged with both investigatory and adjudicatory functions. See, *e.g.*, *Withrow v. Larkin* (1975), 421 U.S. 35, 47-50, 43 L. Ed. 2d 712, 723-25, 95 S. Ct. 1456, 1464-65." *E & E Hauling*, 107 Ill. 2d at 43.

In sum, the Illinois Supreme Court disposed of both arguments plaintiffs asserted. It recognized that the Illinois General Assembly granted the parties a right to a hearing but the hearing had to be conducted by the governing body of the municipality in which the proposed landfill was to be located. The statute states that Marseilles' jurisdiction was exclusive. (Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(g).) There is no reason that the Marseilles board cannot impartially review this application for a site approval.

Based on the foregoing, the circuit court of La Salle County is affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.