FAIRVIEW AREA CITIZENS TASKFORCE *et al.*, Petitioners-Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Third District   No. 3—89—0408

Opinion filed June 7, 1990.

Michael F. Kukla, of Cowling, Ungvarsky, Kukla & Curran, of Crystal Lake, for petitioners.

Neil F. Hartigan, Attorney General, of Springfield (Christine Zeman and John J. Kim, Assistant Attorneys General, of counsel), for respondent Pollution Control Board.

Thomas R. Mulroy, Raymond T. Reott, and Rebecca Raftery, all of Jenner & Block, of Chicago, and Keith K. Kost, of Kost & Kost, of Lewistown, for respondent Gallatin National Company.

Ralph Froehling, of Froehling, Taylor & Weber, of Canton, for respondent Village of Fairview.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by petitioners, Fairview Area Citizens Taskforce (FACT), Richard Kleine, Norma Kleine, Joseph Comer, Michelle Comer, Lewis Newcomb, Walter Newcomb, Harry Postin, Delores Postin, Gerald Bales, Virginia Bales, John Beoletto, Michael Beoletto, Gerald Ball, Becky Ball, Lyle Utsinger, Gary Hollis, Diane Hollis, Junior Schleich, and Melba Schleich, from a decision of the Illinois Pollution Control Board (IPCB) upholding a previous decision of the Village of Fairview Village Board (village board) granting site approval to Gallatin National Company for a regional pollution-control facility. In this appeal, petitioners raise two issues: (1) whether the procedures employed by the Fairview Village Board were fundamentally fair to petitioners, and (2) whether the decisions of the Fairview Village Board and the IPCB were against the manifest weight of the evidence.

Because the parties are well aware of the facts of this case and the record is extensive, we will not attempt to summarize all of the testimony and public comment contained in the record. Instead, only the facts necessary to the consideration of the parties' contentions

will be referred. However, the parties may rest assured this court has thoroughly reviewed the record in its entirety.

Petitioners were, of course, the objectors before the village board. On appeal, they argue that they were deprived of fundamental fairness because the village board was predisposed to grant the siting application and because the village board improperly considered matters relating to the economic benefit to be derived by the community from the approval of the facility.

■ Although citizens before the village board in this type of proceeding are not entitled to a fair hearing by reason of the constitutional guarantees of due process, they may nevertheless insist the procedure comport with standards of fundamental fairness. (*Tate v. Pollution Control Board* (1989), 188 Ill. App. 3d 994, 544 N.E.2d 1176.) In *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 481 N.E.2d 664, the Illinois Supreme Court considered an objector's arguments of conflict of interest and bias. The Illinois Supreme Court initially determined that these claims had been waived, but decided to consider them anyway because of the likelihood of recurrence.

■ Here, too, the IPCB found that petitioner waived the argument concerning predisposition by failing to challenge village board members at the beginning of the hearings. In order for the question of bias to be reviewed on appeal, the issue must be raised prior to or during the local hearings. (*A.R.F. Landfill, Inc. v. Pollution Control Board* (1988), 174 Ill. App. 3d 82, 528 N.E.2d 390.) On the issue of waiver, the Illinois Supreme Court has stated:

"Generally, of course, a failure to object at the original proceeding constitutes a waiver of the right to raise the issue on appeal. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576-77[, 404 N.E.2d 233, 238-39].) 'A claim of disqualifying bias or partiality on the part of a member of the judiciary or an administrative agency must be asserted promptly after knowledge of the alleged disqualification.' (*Duffield v. Charleston Area Medical Center, Inc.* (4th Cir. 1974), 503 F.2d 512, 515.) The basis for this can readily be seen. To allow a party to first seek a ruling in a matter and, upon obtaining an unfavorable one, permit him to assert a claim of bias would be improper. It can be said that that was the situation here. The village did not claim that it was unaware of the alleged bias before the board hearing was concluded." *E & E Hauling*, 107 Ill. 2d at 38-39, 481 N.E.2d at 666.

Although the Illinois Supreme Court has already discussed bias

and conflict of interest, and it may be unnecessary for this court to consider the issue on the merits since this court agrees with the IPCB that waiver has occurred, we will nevertheless address the merits. Petitioners' arguments center on the prior approval of an annexation agreement by the village board. It is also argued that village board members relied on the report of Otis Michels, president and chief executive officer of Daily & Associates Energies, Inc., a firm retained by Fairview to participate in the evaluation of the landfill. Michels met with applicants, in the presence of the village attorney, on one occasion. He also had other conversations with STS Consultants, Ltd., representatives. STS and Gallatin are owned by STS Holdings, Inc. Based on that, petitioners argue that Michels was predisposed toward Gallatin and, therefore, the village board's decision was fundamentally unfair. Petitioners also contend the local siting-approval hearing was fundamentally unfair because the village board was predisposed to granting approval because the village board members believed the landfill would provide an economic benefit to the community, a factor which is not included among the statutory criteria. It is further argued that board members improperly considered the opinions of constituents gleaned from conversations outside the public-hearing process, that Michels considered matters outside the hearing process by discussing the matter with a person identified as Dr. Griffin, and Michels' report included matters not disclosed in the hearing. All of these arguments were rejected by the IPCB.

In *E & E Hauling* the Illinois Supreme Court held that a county board was not disqualified as a decision maker simply because revenues would be received by the county. It is routine for government agencies to make decisions affecting revenues, and they are deemed to make decisions for the welfare of their governmental unit and their constituents. Board members are subject to public disapproval. Elected officers are subject to being turned out of office and appointed officials are subject to being replaced. Therefore, the Illinois Supreme Court concluded, such public officials should be considered to act without bias.

In *Woodsmoke Resorts, Inc. v. City of Marseilles* (1988), 174 Ill. App. 3d 906, 529 N.E.2d 274, this court held that even though Marseilles could realize more annual income than would the district in *E & E Hauling* it was not fundamentally unfair for Marseilles to review the site-approval application. Marseilles did not own the landfill property, and Marseilles, or its board members, would not realize and enjoy the additional potential revenues or pecuniary benefit, because it was the community at large which stood to gain or lose from the ap-

proval or disapproval of the site. Furthermore, unlike the members of the Du Page County Board in *E & E Hauling*, the Marseilles board members were not both judge and applicant. This court also rejected the claim that the annexation of the property, along with the respective relinquishment of various rights, was evidence of adjudicative prejudgment by Marseilles.

While the Illinois General Assembly granted the parties a right to a hearing, the hearing has to be conducted by the governing body of the municipality in which the proposed landfill is to be located. The statute states that Fairview's jurisdiction is exclusive. (Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(g).) There is no reason that the Fairview Village Board cannot impartially review this application for a site approval.

■ Therefore, the previously approved annexation agreement and possible economic benefit to Fairview do not render the village board biased. Furthermore, for site-location-suitability approval, the facility must meet the criteria set out in section 39.2(a) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(a)). However, while these listed criteria must be satisfied, the statute does not state these are the only factors which may be considered. Nor do petitioners cite any cases which bar consideration of economic benefit to the community. Therefore, there is no impropriety by the village board considering the economic benefit, as long as the statutory criteria are also met.

In their reply brief, petitioners cite an earlier IPCB decision, *City of Rockford v. Winnebago County Board* (1987), 82 Ill. PCB Op. 83–95. In considering the case at bar, the IPCB distinguished that earlier decision from the facts of the instant case. According to petitioners, that leads to inequitable results, allowing the IPCB to reverse when the applicant complains the board considered matters outside the record and factors other than the statutory criteria—or to affirm when faced with these same contentions. A fair reading of these two decisions, however, indicates the petitioners' objection is meritless.

In the *City of Rockford* case, the IPCB was concerned that the local board rejected site approval based on factors independent of consideration of the statutory factors, such that the local board may have rejected the site application even if the criteria were met. Merely because the IPCB decided in the instant case that a local board may consider factors in addition to the statutory factors does not require, as the petitioners would have this court conclude, that the IPCB would refuse to reverse a board's local siting approval if the board considered additional factors where there was insufficient evidence to

support one or more of the statutory criteria.

■ Petitioner admits the village board may retain an expert to advise the board. On the other hand, they argue the expert should remain impartial, refrain from *ex parte* contact, and refrain from considering matters not presented as evidence at the hearing. The unanimous decision of the IPCB found that even though three village board members testified that they considered Michels' report along with all evidence and written comment when making their decision, elected officials are presumed to act objectively, and there is no evidence that the village board members acted otherwise. Since no village board member attended the September 1988 meeting between Michels and Gallatin's representatives, there is no evidence the village board relied improperly upon Michels' report. Michels' alleged predisposition is not relevant because Michels did not have a vote. With regard to matters included in Michels' report which were not matters testified to at the hearing, the IPCB found that report was properly submitted as public comment, to which petitioners had an opportunity to respond, but did not. The record supports those findings of the IPCB.

■ The IPCB also found that petitioners waived their challenge to the alleged predisposition of village board member Doyal Williams based on his March 1988 conversation with Kent Schleich, concerning which Schleich testified to the effect that Williams' mind was made up and he would not change it. As the IPCB pointed out, this matter should have been raised at the local hearing, but was not. There is no reason the challenge could not have been raised, and it is waived. *Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 530 N.E.2d 682.

The remaining contention to be considered under this issue is whether petitioners were denied fundamental fairness by village board members' contacts with constituents and members of the general public outside the hearing process. The testimony indicates that this public comment was both for and against the site approval. Obviously Schleich and Wilmadean Fengel, opponents of the landfill, discussed the landfill matter with Williams. In *Waste Management*, the court stated:

"A court will not reverse an agency's decision because of *ex parte* contacts with members of that agency absent a showing that prejudice to the complaining party resulted from these contacts. (*E & E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 607, 451 N.E.2d 555, *aff'd* (1985), 107 Ill. 2d 33, 481 N.E.2d 664.) Here, the record does not indicate that Waste Management suffered any prejudice as a result

of the contacts between citizens of Lake County and LCB members. The various telephone calls, letters, and personal contacts were merely expressions of public sentiment to county board members on the issue of Waste Management's landfill application. Moreover, existence of strong public opposition does not render a hearing fundamentally unfair where, as here, the hearing committee provides a full and complete opportunity for the applicant to offer evidence and support its application. (*Waste Management*, 123 Ill. App. 3d at 1081, 463 N.E.2d at 974.) Further, *ex parte* communications from the public to their elected representatives are perhaps inevitable given a county board member's perceived legislative position, albeit in these circumstances, they act in an adjudicative role as well. Thus, although personal *ex parte* communications to county board members in their adjudicative role are improper, there must be a showing that the complaining party suffered prejudice from these contacts. (*E & E Hauling, Inc.*, 116 Ill. App. 3d at 606-07, 451 N.E.2d at 571; see also *Town of Ottawa*, 129 Ill. App. 3d at 126-27, 472 N.E.2d at 154.) There is no showing of prejudice here, particularly in light of the extensive record developed during the local hearing. Accordingly, there is no basis to reverse the decision of the PCB on this issue." *Waste Management*, 175 Ill. App. 3d at 1043, 530 N.E.2d at 697-98.

■ In the case at bar it is the objectors who assert unfair treatment by reason of the *ex parte* comment. However, they, too, were given every opportunity to be heard and to present evidence at the hearings. The record does not demonstrate prejudice to the petitioners and, therefore, the petitioners' attempt to have the administrative decision overturned on the basis of a fundamentally unfair hearing must fail.

■ The remaining issue to consider is whether the decisions of the Fairview Village Board and the IPCB were against the manifest weight of the evidence. Section 39.2(a) of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(a)) provides:

"The county board of the county or the governing body of the municipality, as determined by paragraph (c) of Section 39 of this Act, shall approve the site location suitability of a new regional pollution control facility only if the facility meets the following criteria:

(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be

operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain or the site is flood-proofed;

(v) the plan of operations for the facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows;

(vii) if the facility will be treating, storing or disposing of hazardous waste, an emergency response plan exists for the facility which includes notification, containment and evacuation procedures to be used in case of an accidental release; and

(viii) if the facility will be located within a regulated recharge area, any applicable requirements specified by the Board for such areas have been met."

On appeal, the sufficiency of the evidence supporting five of the criteria is challenged by petitioners. The five challenged criteria sections are 39.2(a)(i), (a)(ii), (a)(iii), (a)(v), and (a)(vi). In *Tate*, the standard of review in a regional pollution-control facility site-location-suitability case was stated:

"*Waste Management of Illinois, Inc. v. Pollution Control Board* (1987), 160 Ill. App. 3d 434, 513 N.E.2d 592, decided that all of the statutory criteria must be satisfied in order for approval and that the proper standard of review for the County Board's decision is whether the decision is against the manifest weight of the evidence, with the manifest weight standard being applied to each and every criterion. See also *City of Rockford v. Pollution Control Board* (1984), 125 Ill. App. 3d 384, 465 N.E.2d 996.

A decision is against the manifest weight of the evidence if the opposite result is clearly evident, plain, or indisputable from a review of the evidence. (*Harris v. Day* (1983), 115 Ill. App. 3d 762, 451 N.E.2d 262.) The province of the hearing body is to weigh the evidence, resolve conflicts in testimony, and assess the credibility of the witnesses. A reviewing court is not in a position to reweigh the evidence, but can merely determine if the decision is against the manifest weight of the evidence. *Jackson v. Board of Review of the Department of Labor*

(1985), 105 Ill. 2d 501, 475 N.E.2d 879; *McKey & Poague, Inc. v. Stackler* (1978), 63 Ill. App. 3d 142, 379 N.E.2d 1198." *Tate*, 188 Ill. App. 3d at 1022, 544 N.E.2d at 1195.

■ On the question of whether the proposed facility is necessary to accommodate the waste needs of the area it is intended to serve, we agree with the IPCB's finding that the village board's decision was not against the manifest weight of the evidence. Gallatin has defined the area the facility is intended to serve as Fulton County and five adjoining counties, plus six counties in northeastern Illinois. Wayne P. Pferdehirt testified that the proposed facility is necessary to accommodate the needs of the service area. Petitioners did not present any contrary evidence.

Instead, petitioners challenge the methods used by Pferdehirt in arriving at his conclusion. They argue he merely relied on Illinois Environmental Protection Agency (IEPA) reports, rather than doing an independent analysis. However, petitioners do not suggest why the IEPA reports are unreliable. They argue he improperly relied on information concerning waste generation in McHenry County as analogous to the waste-generation capacity of the local six-county service area, and failed to consider the capability of some of the smaller municipal landfills in the six-county northeastern Illinois service area.

However, the similarities and dissimilarities between McHenry County and the local service area were before the village board. Furthermore, petitioners presented no evidence to suggest the small, municipal landfills located in the northeastern Illinois service area omitted from consideration would have a significant impact on the needs of the service area.

Likewise, petitioners argue the local six-county service area's need has not been demonstrated. The local counties included in the service area are Fulton, Knox, Mason, McDonough, Schuyler, and Warren Counties. Petitioners contend (1) Schuyler County waste is mostly disposed of in Cass County, and there is no evidence of the life expectancy of the landfill in Cass County, or that any of the Schuyler County waste is currently or will in the future be disposed of at the proposed facility; (2) Warren County waste is disposed of in Mercer County, and there is no evidence of the life expectancy of the Mercer County landfill, or that Warren County will dispose of its waste in the proposed facility; (3) Knox County disposes of all of its waste in Knox County and petitioners suggest the Knox County landfill has a three-year life expectancy; (4) the life expectancy of the McDonough landfill is 11 years; (5) the life expectancy of the Fulton County landfill is nine years; and (6) Mason County currently sends half its waste to

Fulton County, and half to Tazewell County (which is outside the service area). Petitioners contend that all areas which currently send their waste to landfills outside of the proposed local service area should be excluded from the proposed local service area.

In *Tate*, it was explained that the criterion of whether a facility is necessary to accommodate the area's needs does not require a showing of absolute necessity. Nor should the need be determined by application of an arbitrary standard of life expectancy of existing disposal capacities. If the Knox County landfill has a life expectancy of three years, in three years Knox County will be sending waste to Mercer, McDonough, Fulton, or some other landfill. Petitioners have presented no evidence of a proposal to expand the Knox County landfill or to build a new landfill in Knox County. As a result of the Knox County landfill being closed in three years, the life expectancy of the surrounding landfills could be considerably shortened. And while the village board was not made aware of the life expectancies of the Cass, Mercer, or Tazewell County landfills, by either Gallatin or petitioners, the village board could reasonably conclude that the stress on those landfills, as well as on the landfills in the six-county local service area, could be considerably relieved by the proposed facility, thereby extending the life expectancies of the existing facilities.

Had the life expectancies of the local and surrounding landfills been such as to negate a need, petitioners had the opportunity to place such evidence before the village board. While challenging Gallatin's figures, petitioners did not present calculations of their own for the village board's consideration. As a result, it is appropriate for the village board to rely on the information in evidence.

The next criterion to consider is whether the proposed facility is so designed, created, and proposed to be operated that the public health, safety, and welfare would be protected. Before the IPCB, petitioners argued that there is no natural protection at the proposed sites and that Gallatin relies solely on engineered protection features, which petitioners' experts indicate could fail, resulting in groundwater contamination. The IPCB found the decision of the village board was not against the manifest weight of the evidence.

■ Most of the testimony and evidence presented at the hearings before the village board pertained to this criterion. The determination of this question is purely a matter of assessing the credibility of expert witnesses, an issue the village board decided in favor of Gallatin. Since there is evidence to support the village board's decision and, as was pointed out in *Tate*, it is not the function of the reviewing court to reweigh evidence or reassess credibility, the finding of the village

board on this criterion is not against the manifest weight of the evidence.

The third criterion to consider is whether the proposed facility is located so as to minimize incompatibility with the character of the surrounding area and the effect on the value of surrounding property. William A. McCann, a real estate appraiser, testified he believed the proposed facility was located in such a way as to minimize the impact on the value of other property in the area. McCann pointed to the facts that (1) the 80-acre disposal area is to be located within a 995-acre facility, which itself is located within a 2,700-acre parcel owned by Gallatin; (2) the area is rural and largely agricultural in use and characterized by depleted, mined-out land; (3) except for one residence within half a mile of the facility and one residence within a mile, most residences in Fairview itself are 1½ miles from the site; and (4) there will be a 500-foot green area with berms. On the other hand, petitioners presented no contrary evidence or testimony.

Petitioners contend Gallatin has not sufficiently demonstrated it has taken and plans to take reasonably feasible steps to do what it can to minimize the impact of the facility, but has shown only minimal effort. Petitioners cite *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 123 Ill. App. 3d 1075, 463 N.E.2d 969. This case was referred to in *Tate*:

> "The case of *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 123 Ill. App. 3d 1075, 463 N.E.2d 969, discussed the type of evidence which might appropriately be considered with reference to minimizing the impact of the proposed facility to the surrounding area. However, it is logical to require this evidence to be presented only if there is indeed some incompatibility with the surrounding area shown to exist." *Tate*, 188 Ill. App. 3d at 1025, 544 N.E.2d at 1197.

With regard to this criterion, it is difficult to imagine a more practical place to locate a landfill than the site proposed here. Certainly the landfill would have no more deleterious impact on the value or aesthetics of the surrounding area than does an abandoned strip mine. Since petitioners have placed no evidence on this issue before the village board, the village board could reasonably accept the testimony and report of McCann.

The fourth criterion to consider is whether the proposed facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents. As the IPCB noted, the engineering report submitted by Gallatin in conjunction with its application contains a section addressing criterion five. The report discusses

fire, security, spills, and other accidents. Again, petitioners introduced no evidence on this criterion, and their challenge appears to be based upon an alleged lack of detail in the Gallatin application. Absent any evidence being submitted by petitioners demonstrating the procedures outlined by Gallatin are inadequate, the decision of the village board was not against the manifest weight of the evidence.

The final question is whether the village board's decision is against the manifest weight of the evidence because the traffic patterns to and from the facility are not so designed as to minimize the impact on existing traffic flows. Gallatin presented testimony from Matthew C. Sielski, a traffic engineer, who stated he believed the proposed facility satisfied this criterion. Sielski submitted a traffic-study report and concluded that traffic accidents are not expected to increase and the surrounding roads could easily accommodate the expected 8% increase in daily traffic. Again, petitioners did not present any contrary evidence or testimony relating to this criterion.

While *Tate* involved the expansion of an existing facility, the question of the impact on existing traffic flows was discussed. In *Tate* it was decided that the applicant was not required to place into evidence designs for exact routes, types of traffic and projections of volume and hours of traffic. The statute does not refer to a "traffic plan," but about traffic patterns to and from the facility being designed to minimize impact on existing traffic flow. Complaints about traffic noise and dust do not relate to the effect on traffic flow. Nor is the potential negligence of the truck drivers relevant to the effect on traffic flow. The operative word in the statute is "minimize." It is impossible to eliminate all problems.

There is no doubt there will be increased traffic on Route 97 at or near the site's entrance. Sielski's conclusion is based on his expectation that most of the increased traffic will utilize Route 97, while he seemed to consider the other roads adjoining the site, including the streets of Fairview, to be required to accommodate a lesser increase in traffic. Petitioners presented no evidence of how the traffic flow to the expanded facility would negatively impact existing traffic flow or how the traffic flow should be changed, as had been done in *McHenry County Landfill, Inc. v. Environmental Protection Agency* (1987), 154 Ill. App. 3d 89, 506 N.E.2d 372.

As Gallatin points out, the question is not whether there will be no adverse impact, but whether the impact on traffic flow has been minimized. Should a new access road be built? Should landfill traffic be routed to Routes 9 or 116? Should traffic signals or signs be installed at any intersections where they are not presently located? Pe-

titioners presented no evidence to indicate that the proposed traffic patterns did not already minimize the impact on the existing traffic flow. No State, county, township, or village official concerned with roadways or traffic testified that the traffic patterns in Gallatin's proposal did not minimize the impact on existing traffic flows. While Sielski's credibility was challenged, the village board apparently found him to be a credible witness and, as already indicated, it is not a function of the reviewing court to reassess credibility. Therefore, this criterion does not support reversal.

Accordingly, the order of the IPCB affirming the decision of the Village of Fairview is affirmed.

Affirmed.

KNECHT and STEIGMANN, JJ., concur.