METROPOLITAN WASTE SYSTEMS, INC., *et al.*, Petitioners, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District    No. 3—90—0021

Opinion filed August 7, 1990.

52

Jenner & Block, of Chicago (Russell J. Hoover, of counsel), for petitioners.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Matthew J. Dunn and Michelle D. Jordan, Assistant Attorneys General, of Chicago, of counsel), for respondent Pollution Control Board.

Daniel J. Bute, of Ottawa, for respondent City of Marseilles.

George Mueller, of Hoffman, Mueller, Creedon & Twohey, of Ottawa, for *amicus curiae.*

JUSTICE STOUDER delivered the opinion of the court:

The petitioners, Metropolitan Waste Systems, Inc., Spicer, Inc., and Spicer Properties, Inc., sought local siting approval from the respondent, the city of Marseilles, for a new regional pollution control facility. Following a hearing conducted pursuant to section 39.2(d) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(d)), the city denied the petitioners' request for siting approval. The petitioners appealed the city's decision to the respondent, Illinois Pollution Control Board (PCB), pursuant to section 40.1 of the Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1040.1), and the PCB affirmed the decision of the city. The petitioners appeal.

The issues raised on appeal are: (1) whether the city was authorized under the Act to alter the intended service area; and (2) whether the PCB properly found that the city's denial of the petitioners' local siting application was not against the manifest weight of the evidence.

In January 1988, the petitioners filed a request with the city for site location approval for a new regional pollution control facility pursuant to section 39.2 of the Act. Various objectors then filed suit seeking to enjoin the city council from conducting the required hearing, claiming that the city was institutionally biased in favor of the application. The trial court dismissed the suit, and this court affirmed the dismissal. *Woodsmoke Resorts, Inc. v. City of Marseilles* (1988), 174 Ill. App. 3d 906, 529 N.E.2d 274.

The city then retained an environmental attorney, Harvey Sheldon, to act as an independent hearing officer for the application. Following a lengthy hearing, Sheldon concluded that criteria (i) and (iii) through (ix) of section 39.2(a) of the Act (Ill. Rev. Stat. 1989, ch. 111½, pars. 1039.2(a)(i), (a)(iii) through (a)(ix)) had been met by the petitioners. With regard to criterion (ii), however, Sheldon concluded that more site-specific data regarding the bedrock were required.

The petitioners then moved to reopen the hearing and to extend the date for decision in order to address Sheldon's concerns. The motion was denied, and before the city rendered a final decision, the petitioners withdrew their application.

On January 17, 1989, the petitioners filed a new application for site approval for the same location as the 1988 application. In addition, the petitioners submitted the results of additional bedrock stud-

ies. After the public hearing, Sheldon, the hearing officer for this application also, determined that the petitioners had met their burden of proof on each of the criteria set forth in section 39.2 of the Act.

On July 26, 1989, the city issued its decision. The city adopted Sheldon's findings and recommendations with respect to sections 39.2(a)(iii) through (a)(ix). (Ill. Rev. Stat. 1989, ch. 111½, pars. 1039.2(a)(iii) through (a)(ix).) The city, however, found that the petitioners failed to meet their burden of proof regarding criteria (i) and (ii). (Ill. Rev. Stat. 1989, ch. 111½, pars. 1039.2(a)(i), (a)(ii).) The city, therefore, denied site approval. In so doing, the city rejected the findings of the expert it retained to review the application. We note, however, that no question was raised regarding whether the city is authorized to summarily reject the opinion of its own retained expert in such a technical field.

On July 27, 1989, the petitioners filed their petition with the PCB pursuant to section 40.1 of the Act. (Ill. Rev. Stat. 1989, ch. 111½, par. 1040.1.) The petitioners argued that the city's decision finding that the petitioners failed to meet their burden of proof on section 39.2(a) criteria (i) and (ii) was against the manifest weight of the evidence.

On December 6, 1989, the PCB issued its order and opinion upholding the city's decision. A majority of the PCB held that the hearing was fundamentally fair and the city's findings that the petitioners had failed to meet criterion (ii) were supported by the manifest weight of the evidence. However, no majority could be reached on whether the city's findings that the petitioners had failed to meet criterion (i) were against the manifest weight of the evidence.

The PCB members subsequently filed three supplemental opinions. In sum, the three supplemental opinions demonstrate that: (1) Three PCB members believed that the city could alter the "intended service area," while three PCB members believed that the city could not alter the "intended service area," and (2) by a 4 to 2 vote, a majority of the PCB members believed that the city's denial on criteria (i) and (ii) was not against the manifest weight of the evidence.

■■ ■ All of the statutory criteria set forth in section 39.2(a) must be satisfied before a local board may approve a local siting application. (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1987), 160 Ill. App. 3d 434, 513 N.E.2d 592.) In reviewing the PCB's decision in the instant case, we are limited to a determination of whether the administrative agency's decision is contrary to the manifest weight of the evidence, and, as such, a reviewing court should not reweigh the conflicting testimony. *City of Rockford v.*

*County of Winnebago* (1989), 186 Ill. App. 3d 303, 542 N.E.2d 423.

In the petitioners' application, the proposed service area for the facility is made up of La Salle, Grundy, Kendall, Will, Du Page, Kane, McHenry, Cook, and Lake Counties in Illinois. One of the petitioners' principal witnesses, Dr. Charles Haas, testified at the hearing that in his opinion the facility is necessary to accommodate the waste needs of the area it is intended to serve. While Haas testified that existing facilities had only a 4½-year life expectancy, he also stated that, when considered individually, Grundy County had a facility with a remaining life expectancy of 7.7 years, Du Page County's facility had a remaining life expectancy of nine years, Kane County's facility had a life expectancy of 6.5 years, and La Salle County's facility had a remaining life expectancy of seven years. The city and PCB concluded, therefore, that the petitioners' facility is not needed in the area intended to be served.

■■ ■ Under criterion (i), the petitioners must establish that the site location is necessary for the area to be served. (Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(a)(i).) In reviewing PCB decisions regarding site location approval, an applicant need not show absolute necessity in order to satisfy criterion (i). (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 122 Ill. App. 3d 639, 461 N.E.2d 542.) In denying the petitioners' application, the city noted the petitioners did not establish that the facility was necessary because, absent the inclusion of Cook and Lake Counties in the intended service area, the instant facility was not needed. Section 39.2(a)(i) of the Act provides that the applicant has the burden of establishing that "the facility is necessary to accommodate the waste needs of the area it is intended to serve." (Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(a)(i).) We read the statute to mean that it is the applicant who defines the intended service area, not the local decision-making body. Therefore, because the city had no authority to amend the intended service area and because the city itself noted inferentially that with Cook and Lake Counties included in the intended service area, the petitioners would have proven need, we conclude that the petitioners satisfied criterion (i).

■■ Section 39.2(a)(ii) requires that the petitioners establish that the "facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected." (Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(a)(ii).) The petitioners presented expert testimony to the effect that the proposed facility would comply with criterion (ii). The city presented expert testimony to the effect that the facility would not comply with criterion (ii). The petitioners

argue that their witnesses were the only credible witnesses to testify in the instant case.

■■ ■ The petitioners assert that the opinions expressed by the city's expert witness, Dr. Nolan Aughenbaugh, have no recognized scientific basis. Dr. Aughenbaugh stated that in his opinion, the site is underlain by a continuous system of vertical fractures that extends all the way to the St. Peter sandstone protecting the St. Peter aquifier. He further stated that, contrary to the petitioners' expert, the clay liner was not sufficiently plastic to prevent flexure. Dr. Aughenbaugh, moreover, admitted that he had no way to verify his theory. We note that this St. Peter sandstone overlays the entire State of Illinois. Therefore, according to Dr. Aughenbaugh's theory, there is no way to build a safe landfill in the State of Illinois. It is the PCB, however, that is the governing body properly designated with the duty to weigh the credibility, or lack thereof, of such witnesses. Accordingly, since it is not our function to determine which witnesses are more expert than others, and since we may not decide controverted facts, we are of the opinion that the PCB's decision as to criterion (ii) will stand.

For the foregoing reasons, we affirm the decision of the Illinois Pollution Control Board.

Affirmed.

SCOTT and GORMAN, JJ., concur.