CITIZENS AGAINST REGIONAL LANDFILL, Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Third District   No. 3—93—0410

Opinion filed January 13, 1994.

Hudec Law Offices, S.C., of East Troy, Wisconsin (Patrick J. Hudec, of counsel), for petitioner.

Diane F. O'Neill, Special Assistant Attorney General, of Chicago, for respondent Pollution Control Board.

William Barrett, of De Kalb, for respondent County Board of Whiteside County.

Donald J. Moran, of Pedersen & Houpt, of Chicago, for respondent Waste Management of Illinois, Inc.

JUSTICE BRESLIN delivered the opinion of the court:

The respondent, Waste Management of Illinois, Inc., filed an application for site approval of a regional landfill facility. The Whiteside County Board approved the application, despite a challenge from the petitioner, Citizens Against Regional Landfill (CARL). The Illinois Pollution Control Board (PCB) affirmed the county board's decision. CARL appeals, contending that: (1) the proceedings before the county board were fundamentally unfair because a hearing officer in the case had a conflict of interest; (2) its discovery rights were unduly restricted; (3) the PCB erroneously failed to completely review a deposition before making its ruling; and (4) the PCB erred in imposing sanctions upon CARL's attorney for referring in a brief to matters not properly contained in the record. We affirm.

The record shows that in April 1992, Waste Management filed a request with the Whiteside County Board for approval of a nonhazar-

dous waste landfill. The proposed site was adjacent to an area formerly operated by the county as a landfill. On April 21, 1992, the board appointed William Barrett, a Whiteside County special assistant State's Attorney, as a hearing officer in the matter. Barrett had been hired by the county specifically to represent it in environmental matters.

In March 1992, the county entered into a contract with Waste Management that provided that it was "subject to an affirmative order in the aforementioned siting procedure" and that "the consideration and execution of this agreement by the County [would] not impede or compromise the county's decision-making responsibilities and duties in the aforementioned siting process." The contract further provided that Waste Management would "pay 50% of all reasonable and necessary legal and engineering fees incurred by the county in connection with the proposed landfill prior and subsequent to the siting application." Attorney Barrett helped negotiate this contract on behalf of the county.

In July 1992, a public hearing was held on Waste Management's application. Attorney Barrett served as hearing officer. At the hearing, Waste Management presented the testimony of seven witnesses to establish that they complied with the nine statutory criteria for approving the application. One expert was retained by the county and testified regarding the landfill's ability to meet the criteria. CARL presented the testimony of various lay witnesses. Members of the public also testified.

In September 1992, the county board approved Waste Management's application by a vote of 18-7. Thereafter, CARL appealed the county board's decision to the Illinois Pollution Control Board. The PCB appointed Stephen Gunning to serve as its hearing officer in the matter.

Gunning scheduled a hearing on CARL's petition for review to be held on December 18, 1992. On December 10, CARL requested that Gunning allow it to depose attorney Barrett the day before the scheduled hearing. The county board filed an emergency motion to quash the subpoena served on Barrett. In the motion, the board stated that Barrett represented the county in environmental matters, that he was its counsel on appeal, that if he was deposed he would be compelled to withdraw from the case, and that there was no other attorney who could adequately represent the county in the matter. Gunning granted the county's motion to quash and issued a protective order preventing CARL from taking the deposition of Barrett.

CARL then filed an emergency motion before the PCB to require that Barrett attend the deposition. In support of that motion, CARL's attorney, Patrick Hudec, stated in an affidavit that he had received information to substantiate that Attorney Barrett's fees for his services exceeded $60,000 and were not paid until after the county had approved both the contract between Whiteside County and Waste Management and had received siting approval from the county.

The PCB found that based on Hudec's statement it would allow "exploration, by discovery, of the information Mr. Barrett may possess regarding his role and compensation in such contract." The PCB permitted the deposition to be taken at the beginning of the scheduled hearing for a "minimum amount of time to be determined by the hearing officer, presumably not more than two hours." The PCB further noted that the decision of whether to require or admit the testimony of Barrett at the hearing was to be left to Gunning's discretion based on his evaluation of the deposition.

Barrett was deposed on December 18, 1992. Based on the deposition testimony, Gunning determined that there was no factual support for the statement made in Hudec's affidavit in his emergency motion to the PCB. Thus, Gunning stated that Barrett would not be required to testify. At that point, counsel for CARL requested that the entire deposition be admitted as an offer of proof. Gunning ruled that the entire deposition would not be admitted but only those portions that were relevant to Barrett's testifying. He further stated that he would select the relevant portions and give the parties an opportunity to present argument about what should be included. At the conclusion of the hearing, Gunning found that the hearings of July 1990 were fundamentally fair.

CARL's appeal to the PCB was due on January 4, 1993. On that day, CARL filed its brief with the PCB along with the entire Barrett deposition transcript. On that same day, but after CARL had filed its brief with the PCB, Gunning faxed a letter to the respective counsel in the case indicating which portions of Barrett's transcript would be included in the record. CARL's brief in large measure relied on matters contained in portions of the transcript not included as part of the record by Gunning.

On January 6, 1993, Waste Management filed a motion to strike the portions of CARL's brief relying on matters not included in the record by Gunning. On January 21, 1993, the PCB granted the motion to strike and entered sanctions against Hudec for $2,697.50. In February 1993, the PCB affirmed the decision of the county board to

grant the application for site approval. Thereafter, the PCB denied CARL's motion to reconsider.

On appeal, CARL argues that the proceedings before the county board were not fundamentally fair given that attorney Barrett, the special assistant State's Attorney, served as a hearing officer in the case. CARL points out that as hearing officer Barrett was responsible to ensure that the hearing before the county board was conducted in accordance with the procedures set forth in the Environmental Protection Act (415 ILCS 5/1 et seq. (West 1992)), and that, on the other hand, as special assistant State's Attorney, he was accountable to the citizens of the community in matters concerning the landfill and that those responsibilities included negotiating the landfill contract on behalf of the county. CARL contends that Barrett was a key figure in the negotiation of the contract with Waste Management, that he supported the landfill, and that he appointed himself hearing officer in the case. CARL notes that the county was not represented by counsel at the hearing before the county board. CARL also points out that under the contract Waste Management was to pay 50% of the county's legal fees and that Barrett was not paid by the county until after the site application was approved and then he was paid $106,000 in a two-week period. CARL argues that because of all of the above circumstances, the procedures before the county board were fundamentally unfair.

After carefully considering CARL's arguments and applying the case law cited by the parties, we are unable to agree with CARL.

■ The case law cited by the parties focuses on fundamental fairness in relation to such matters as alleged conflicts of interest, *ex parte* contacts, predisposition, or bias on the part of a *decision maker* in the case. (See *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 481 N.E.2d 664; *Fairview Area Citizens Taskforce v. Pollution Control Board* (1990), 198 Ill. App. 3d 541, 555 N.E.2d 1178; *Town of Ottawa v. Pollution Control Board* (1984), 129 Ill. App. 3d 121, 472 N.E.2d 150.) Here, it is undisputed that as hearing officer in the proceedings before the county board, Barrett was not a decision maker. Moreover, he did not make any recommended findings and did not represent a party before the county board. His sole responsibility as hearing officer was to see that an adequate record was made for the county board to review. Most importantly, CARL on appeal does not identify any conduct on the part of Barrett as hearing officer that affected the outcome of the case. We find that the role of attorney Barrett in this case was not relevant to the issue of the fundamental fairness of the proceeding since he did not have a

vote on whether the site application was to be granted. See *Fairview Area Citizens Taskforce v. Pollution Control Board* (1990), 198 Ill. App. 3d 541, 555 N.E.2d 1178.

Barrett was ultimately under the control and direction of the State's Attorney, who is an elected official responsible to the community and subject to public disapproval and the possibility of being turned out of office. (See *Fairview Area Citizens Taskforce v. Pollution Control Board* (1990), 198 Ill. App. 3d 541, 555 N.E.2d 1178.) The State's Attorney also has a statutory obligation to provide legal advice and service to county officers, including county board members, on matters which would include landfill contracts. (55 ILCS 5/3—9005(a)(4), (a)(7) (West 1992).) We find nothing in those roles creating a conflict of interest. Our conclusion is supported by the principle that there is no inherent bias created when an administrative body is charged with both investigatory and adjudicatory functions. (See *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 481 N.E.2d 664 (procedure upheld where the board was, in essence, both applicant for landfill expansion and the decision maker); *Town of Ottawa v. Pollution Control Board* (1984), 129 Ill. App. 3d 121, 472 N.E.2d 150 (procedure upheld where hearing committee consisted of nine county board members who made recommendations on which the full board acted).) Here, it follows that if various board members could properly serve in an investigative capacity on a hearing committee and also in adjudicatory capacity as members of the full board, then no impropriety occurred when Barrett merely served as a hearing officer but had no decision-making role.

■ Regarding the contract calling for the payment of 50% of the county's legal fees, we note that section 39.2 of the Environmental Protection Act expressly provides that a county may charge siting applicants a reasonable fee to cover necessary costs incurred by the county in the review process. (415 ILCS 5/39.2(k) (West 1992).) The payments made by the petitioner were not a direct pecuniary benefit to any county employee, but rather to the community as a whole. (*E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 481 N.E.2d 664.) There is absolutely no evidence that Barrett's salary was contingent upon site approval. Despite the fact that Barrett was paid a large sum after site approval, there is no evidence in this record to indicate anything other than that the county was obligated to pay him for his services regardless of the outcome. Under the circumstances, we are unable to say that there was any conflict in Barrett acting as a hearing officer in the case.

CARL next argues that hearing officer Gunning improperly restricted the discovery rights of CARL and caused the proceeding to be fundamentally unfair.

■ We disagree. The PCB specifically allowed Barrett to be deposed because it was concerned that Barrett had a financial stake in the outcome of the siting proceeding. Gunning allowed the deposition testimony regarding that matter to be included in the record but restricted other matters. Under the circumstances, we find that Gunning did not abuse his discretion. Moreover, we note that CARL does not point to anything in Barrett's deposition testimony that makes a difference to the outcome of the case. Absent some indication that the restriction of evidence had some prejudicial impact on the proceedings, we find that any error in that regard did not rise to the level of reversible error. See *Johnson v. Burnley* (4th Cir. 1990), 887 F.2d 471.

Carl next argues that the PCB committed reversible error in not reviewing the entire deposition of Barrett before making its ruling.

■ Again, CARL does not point to anything in the excluded portions of the deposition that were relevant to fundamental unfairness. Thus, we are constrained to find that no reversible error occurred with respect to the deposition.

Lastly, CARL argues that the PCB erred in sanctioning CARL for including matters from the deposition of Barrett that were not included in the record. However, CARL has not properly appealed this issue.

Supreme Court Rule 303(c)(2) requires that the notice of appeal specify the judgment or part thereof appealed from and the relief sought from the reviewing court. (134 Ill. 2d R. 303(c)(2).) A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts thereof specified in the notice of appeal. (*Sterne v. Forrest* (1986), 145 Ill. App. 3d 268, 495 N.E.2d 1304; *Myrda v. Coronet Insurance Co.* (1991), 221 Ill. App. 3d 482, 582 N.E.2d 274.) The notice should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court if it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal. *Lang v. Consumers Insurance Service, Inc.* (1991), 222 Ill. App. 3d 226, 583 N.E.2d 1147.

■ Here, CARL's notice of appeal mentions that it was appealing from the PCB's February 25, 1993, order which affirmed the county board's decision to grant site approval. The notice of appeal also referred to the PCB's denial of CARL's motion to reconsider on April 22, 1993. However, neither of those two orders addressed the sanc-

tion issue. In fact, the February 25 order specifically stated that the Board would address the sanction issue in a separate order. Moreover, the notice of appeal does not mention the PCB's order of sanctions entered on January 21, 1993, nor does it include any mention that CARL intended to appeal the sanction order. Accordingly, this court has no jurisdiction to consider the matter.

For the foregoing reasons, the decision of the Illinois Pollution Control Board is affirmed.

Affirmed.

LYTTON and McCUSKEY, JJ., concur.