WILLOWBROOK MOTEL, PARTNERSHIP, Petitioner, v. THE POLLU-
TION CONTROL BOARD *et al.*, Respondents.

First District (5th Division)   No. 83—2404

Opinion filed July 26, 1985.

William J. Harte, Ltd., of Chicago, and Jeffry J. Knuckles, of Naperville, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (James C. Siebert, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

This is a direct review of a decision of the Illinois Pollution Control Board (the Board) denying a variance which would have allowed petitioner to connect its proposed motel into the Marionbrook sewage system. The Board denied the petition for a variance on grounds that the Marionbrook facility was being operated in excess of its design capacity and that any hardship suffered by petitioner was unsupported and self-imposed, and failed to meet the statutory "arbitrary or unreasonable hardship" requirement. (Ill. Rev. Stat. 1981, ch. 111½, par. 1035.) On review, petitioner contends that the Board's findings are against the manifest weight of the evidence. We summarize the facts as follows.

Petitioner has an interest in land located on the northeast corner of Route 83 and Interstate Highway 55 in unincorporated Du Page County, upon which land it plans to build a motel. Petitioner sought a permit authorizing the motel's connection to the Du Page sewer system. The connection would cause discharge to flow into the Marionbrook sewage treatment plant, which is operated by the Du Page County Department of Public Works (the department). The chief engineer of the department refused to issue the sewer connection permit because the Marionbrook facility was under "restricted status," meaning that the plant had reached design capacity. (See Ill. P.C.B. Reg. ch. 3, Rule 604(b), now codified at 35 Ill. Admin. Code sec. 306.402.) In addition, the circuit court of Du Page County had found the Marionbrook plant in violation of its national pollution discharge elimination system permit.

Petitioner requested that the Board grant a variance from restricted status until remedial measures ordered by the circuit court could be implemented. The petition stated that petitioner was a partnership composed of Hortense Singer and the Marcus Corporation, and that Singer had owned the subject property for 29 years. She had

agreed to "submit" the property to the partnership, conditioned upon the issuance of proper permits, in exchange for $120,000, upon which she depended for her retirement years. The petition stated that the property's fair market value with the sewer connection was $150,000, but that the property would be used only as a parking or storage lot absent sewer connection.

The petition recited further that the circuit court had amended its order to allow additional loading to the Marionbrook facility according to an allocation system. The chief engineer of the department of public works calculated that completion of the Knollwood interceptor sewer, anticipated in February of 1984, would make available sufficient allocation under the court order to connect petitioner's motel. The Environmental Protection Agency recommended that petitioner's variance be granted. Petitioner waived hearing.

The board denied the petition on July 14, 1983, stating that despite the court's allocation system, the Marionbrook plant continued to operate in excess of design capacity. The Board noted that the court conditioned use of the allocation system upon granting of a variance, and that variances were warranted only where a petitioner could show arbitrary or unreasonable hardship. The Board noted further that the petitioner obtained its interest in the land while the Marionbrook system was under court order, and concluded that its development plans constituted a gamble on its ability to obtain permits. The Board stated that petitioner's economic loss was self-imposed, and therefore neither arbitrary nor unreasonable. In addition, the Board stated that the hardship suffered by petitioner was simply a delay in investment opportunity, the predictable consequence of placing a sewage treatment plant on restricted status. Finally, the Board maintained that petitioner's allegations of hardship were insufficiently supported.

The Board declined to vacate its order on September 8, 1983, and petitioner filed for direct review in this court on October 5, 1983.

OPINION

■ We must first decide whether we have jurisdiction, an issue which we raised at oral argument in this cause. The Illinois Constitution provides that "[t]he Appellate Court shall have such powers of direct review of administrative action as provided by law." (Ill. Const. 1970, art. VI, sec. 6.) Section 41 of the Environmental Protection Act (the Act) provides in pertinent part:

"[A]ny person who has been denied a variance *** may obtain judicial review *** directly in the Appellate Court *for the Dis-*

*trict in which the cause of action arose* and not in the Circuit Court." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 111½, par. 1041.)

Where jurisdiction is conferred by statute, the general rule is that the legislature may place such conditions on the ability of the court to hear the matter as it deems fit. (See *Brown v. Van Keuren* (1930), 340 Ill. 118, 172 N.E. 1; *McCue v. Brown* (1974), 22 Ill. App. 3d 236, 317 N.E.2d 398.) If the language in section 41 is construed as such a condition, it appears that we are without jurisdiction, for the instant cause of action arose in the Second District, not the First.

■ Our supreme court considered this section 41 language in *Rockford Drop Forge Co. v. Pollution Control Board* (1980), 79 Ill. 2d 271, 402 N.E.2d 602, and termed the issue one of venue. The court did not consider jurisdiction, but apparently deemed venue waived, and decided to reach the merits in the interest of judicial economy. (79 Ill. 2d 271, 275-76.) Our research supports this approach. Jurisdiction is the power of the court to hear and decide a class of cases, whereas venue merely regulates where the case is to be heard. (*Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 328, 368 N.E.2d 88; *United Biscuit Co. v. Voss Truck Lines, Inc.* (1950), 407 Ill. 488, 95 N.E.2d 439.) In Illinois, "[t]he judicial power is vested in a Supreme Court, an Appellate Court and Circuits Courts" (Ill. Const. 1970, art. VI, sec. 1), and the districts are essentially elective units and administrative branches of the same court. (See Ill. Const. 1970, art. VI, secs. 1-6, 12 and 18; Ill. Rev. Stat. 1983, ch. 37, par. 25; *Renshaw v. General Telephone Co.* (1983), 112 Ill. App. 3d 58, 445 N.E.2d 70.) We hold that section 41 of the Environmental Protection Act vests jurisdiction in "the Appellate Court" and establishes venue in "the District in which the cause of action arose." We conclude that we have jurisdiction to consider this case, and we find that the parties have waived venue. *Cf.* Kane County Defenders, Inc. v. Pollution Control Board, No. 84—518 (order entered September 10, 1984, transferring petition to Second District upon timely objection to venue in First District).

On the merits, petitioner contends that the Board's denial of a variance was against the manifest weight of the evidence. Relying upon *Monsanto Co. v. Pollution Control Board* (1977), 67 Ill. 2d 276, 367 N.E.2d 684, and *Environmental Protection Agency v. Lindgren Foundry Co.* (1970), 1 Ill. P.C.B. Op. 11, petitioner maintains that in order to decide whether a variance should be granted, the Board is required to balance individual hardship and environmental impact. Petitioner argues that the Board failed to produce evidence associating

the proposed sewer connection with any adverse environmental impact, and petitioner asserts that such impact would be insignificant. In view of recent improvement in water quality at the Marionbrook plant, and the additional capacity provided by the order of the circuit court, petitioner reasons, denial of a variance imposes an arbitrary and unreasonable hardship. Further, petitioner argues that the Board erred in finding insufficient evidence of hardship.

In *Monsanto Co. v. Pollution Control Board* (1977), 67 Ill. 2d 276, 367 N.E.2d 684, the Board had granted four successive 12-month variances to one of Monsanto's chemical plants, but the Board had imposed progressively stiffer conditions upon each variance. Monsanto appealed from the fourth variance and argued that according to the evidence, the conditions were impossible to meet. This court reversed and remanded to the Board, stating that the conditions were without evidential support. *Monsanto Co. v. Pollution Control Board* (1976), 39 Ill. App. 3d 333, 338-39, 350 N.E.2d 289, *rev'd* (1977), 67 Ill. 2d 276, 367 N.E.2d 684.

The Illinois Supreme Court reversed the appellate court and reinstated the decision of the Pollution Control Board. The court distinguished between the fact-finding function and the policy-making function of administrative agencies, noting with respect to the former:

"Section 35 of the Environmental Protection Act gives the Board authority to decide if a regulation imposes an arbitrary or unreasonable hardship on an individual polluter. If the Board finds such hardship, it may then grant a variance. This decision is essentially quasi-judicial, and, as such, must be supported by a written opinion with specific findings which are entitled to a presumption that they are *prima facie* true and correct (Ill. Rev. Stat. 1975, ch. 110, par. 274). Nonetheless, if the factual determinations of the Board, or of any administrative agency, are contrary to the manifest weight of the evidence, the reviewing court is empowered to reverse the agency's findings. [Citations.]" 67 Ill. 2d 276, 289.

However, the court held that the setting of conditions is a policy-making function and that courts should defer to agencies in such matters unless a decision is "arbitrary, unreasonable or capricious." (67 Ill. 2d 276, 290-91.) The passage upon which petitioner relies appears in context as follows:

"Moreover, Monsanto's emphasis on its alleged inability to comply is misplaced. In granting or denying a variance, and in setting interim standards once a variance is granted, the Board must balance individual hardship against environmental impact.

Inability to comply with a State standard does not make mandatory the granting of a variance. Likewise, inability to limit discharge to the level prescribed by a condition of a variance does not require the Board to change that level." 67 Ill. 2d 276, 292.

In *Environmental Protection Agency v. Lindgren Foundry Co.* (1970), 1 Ill. P.C.B. Op. 11, the new owners of a foundry operation sought a variance from particulate emission standards while control equipment was being installed. The new owners argued that denial of the variance would render the venture financially impossible. The Board found that if the foundry remained closed, the owners would lose $70,000, unsecured creditors would lose $75,000, and former employees would lose their opportunity for re-employment. The Board also found that the haze and soot associated with the uncontrolled operation of the foundry had increased the maintenance costs of area homeowners. One witness testified that her son had asthma attacks when the foundry was in operation, but not when the foundry was closed.

The Board noted that good effects of compliance should be compared to bad effects when considering a variance, but the Board went on to say:

"The words 'unreasonable' and 'arbitrary' plainly suggest that the Board is not to examine in every case whether or not compliance would be a good thing. To do so would completely destroy the force of the regulations and encourage excessive litigation. Moreover, if the costs and benefits are anywhere near equal, simple fairness dictates that the burden should be borne by those who profit from the polluting operation rather than by the innocent neighbors. Accordingly, the statute creates a strong presumption in favor of compliance. A variance is to be granted only in those extraordinary situations in which the cost of compliance is wholly disproportionate to the benefits; doubts are to be resolved in favor of denial." (1 Ill. P.C.B. Op. 11, 16.)

The Board stated that the new owners had reason to know when they invested that they could not operate the foundry without a favorable decision on their petition for a variance, and so their loss of investment was a self-imposed hardship. The Board considered the losses to creditors and former employees more sympathetically, but concluded that it was fair that the hardship be borne by those who would benefit from the operation.

In our view, *Monsanto* and *Lindgren* provide little support for petitioner's argument that the Board errs in denying a variance absent

a particularized showing of environmental harm. Rather, we believe these cases stand for the heavy burden which the petitioner for a variance must bear. The burden was upon petitioner to convince the Board that a variance was necessary to avoid arbitrary or unreasonable hardship. The Board found that it was not. In order to prevail in this court, petitioner must demonstrate that the Board's decision was contrary to the manifest weight of the evidence. That a different conclusion might be reasonable is insufficient; the opposite conclusion must be evident. *Philipsborn Equities, Inc. v. Pollution Control Board* (1981), 94 Ill. App. 3d 1055, 1057, 419 N.E.2d 470.

■ We cannot say that the denial of a variance to petitioner under these circumstances was contrary to the manifest weight of the evidence. The hardship here consists of a temporary prohibition against intense development of the property. Petitioner here argues, as the parties did in *Monsanto* and *Lindgren*, that a delay will result in termination of the project. Of course, any delay might alter the economics of building a motel such that petitioner would decide not to go ahead with the project. Even so, the petitioner itself would lose only expected profits and incidental expenses, because the partnership's obligation to pay Mrs. Singer is contingent upon the variance. The hardship to Mrs. Singer is impossible to determine on this record. Although she would not receive payment from the partnership, the record fails to disclose either the price which she paid for the property or the current value of the land for less intense alternative uses. Therefore, we agree with the Board that petitioner made an insufficient showing of hardship. See *Armour-Dial, Inc. v. Pollution Control Board* (1978), 60 Ill. App. 3d 64, 71-72, 376 N.E.2d 411.

Further, granting that more intense land uses are generally more valuable than less intense uses, we cannot say that such a diminution in value constitutes an *arbitrary* or *unreasonable* hardship. Every owner of unimproved land in the area served by the Marionbrook facility is subject to similar hardship. (See, *e.g., Willowbrook Development Corp. v. Pollution Control Board* (1981), 92 Ill. App. 3d 1074, 416 N.E.2d 385.) If courts required the Board to grant a variance whenever a petitioner perceived a favorable opportunity for intense development, the Board's control of overburdened sewage systems would be chimeric.

■ Finally, we reject petitioner's assertion that environmental impact would be insignificant. As this court noted in *Springfield Marine Bank v. Pollution Control Board* (1975), 27 Ill. App. 3d 582, 587, 327 N.E.2d 486, "lines must be drawn somewhere even though each successive increase in the load in a sewer may have minimal effect."

The circuit court of Du Page County, in an order which was made part of the administrative record in this case, found that "additional uncontrolled loading to the Marionbrook Plant and to the sewers tributary to the plant shall result in a threat to the public health and welfare by adding pollutional discharges to the waters of the State and aggravating existing sewer system overflows." (People v. County of Du Page, No. 80MR 432 (order entered December 4, 1980).) The burden was not upon the Board to show that harm to the public outweighed petitioner's loss of an investment opportunity; the burden was upon petitioner to show that arbitrary or unreasonable hardship outweighed the public interest in compliance with regulations designed to preserve the environment and protect human health. This, petitioner failed to do.

For the foregoing reasons, we affirm the decision of the Pollution Control Board.

Affirmed.

MEJDA, P.J., and PINCHAM, J., concur.