WABASH AND LAWRENCE COUNTIES TAXPAYERS AND WATER DRINKERS ASSOCIATION, Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Appellees.

Fifth District   No. 5—89—0366

Opinion filed May 14, 1990.

John A Clark, of Croegaert, Clark & Hough, Ltd., of Olney, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellee Pollution Control Board.

Richard L. Kline, of Mt. Carmel, and William A. Speary, Jr., of Tenney & Bentley, of Chicago, for appellee K/C Reclamation, Inc.

No brief filed for other appellee.

JUSTICE RARICK delivered the opinion of the court:

Appellant, Wabash and Lawrence Counties Taxpayers and Water Drinkers Association (hereinafter Association) seeks review of the decision of the Illinois Pollution Control Board (hereinafter PCB) affirming the approval granted by the Wabash County Board of Commissioners (hereinafter Commissioners) of K/C Reclamation, Inc.'s application for site suitability for a proposed regional pollution control facility in Wabash County. We affirm.

On January 12, 1987, K/C Reclamation, Inc. (hereinafter K/C), filed an application for approval of site location for a proposed sanitary landfill and recycling facility on a 45-acre portion of a 172-acre parcel of land in the northeast corner of Wabash County. According to the

application, the landfill was designed to accept general municipal refuse and nonhazardous special water from the area, including Wabash and Lawrence Counties, with an expected useful life of approximately 70 years. The Commissioners approved the application on July 6, 1987, after holding the required public hearings. The PCB vacated the decision, however, on the basis the Commissioners did not have jurisdiction to make a determination concerning K/C's application because K/C failed to comply with the notice requirements of section 39.2(b) of the Environmental Protection Act (hereinafter Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(b)). K/C refiled its original application for site-suitability approval with the Commissioners on January 20, 1988. After three days of public hearings, during which the transcript, exhibits and written comments from the hearings pertaining to K/C's first application were incorporated, the Commissioners again approved site suitability. The Association, in turn, once again appealed the Commissioners' decision to the PCB. This time, however, the PCB affirmed the Commissioners' decision. The Association now appeals both decisions.

■ The Association, having been successful once, again attempts to find violations of the statutory notice requirements in order to thwart the jurisdiction of the Commissioners to grant K/C approval. This time, however, the Association's argument is without merit. While it is true the notice requirements contained in section 39.2(b) of the Act are jurisdictional prerequisites which must be followed in order to vest the Commissioners with power to hear a landfill proposal (see *Browning-Ferris Industries of Illinois, Inc. v. Pollution Control Board* (1987), 162 Ill. App. 3d 801, 805-06, 516 N.E.2d 804, 807; *Kane County Defenders, Inc. v. Pollution Control Board* (1985), 139 Ill. App. 3d 588, 593, 487 N.E.2d 743, 746), the Association's allegations of three instances of improper notice here simply are not supported by the record.

■ Under section 39.2(b), notice is required to be sent to all owners of property within 250 feet of the property line of the proposed facility. "Owners" are defined as those persons or entities appearing from the authentic tax records of the county in which such facility is to be located. (See Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(b).) The Association's first claim of error involves property that was listed on the tax records as owned by the heirs of a certain individual. It is true only one heir received notice, but only that heir was listed by name and address in the tax records to receive the tax statement on behalf of all the heirs. As K/C notified the owner of the property appearing from the authentic tax records, the PCB properly found the notice complied

with section 39.2(b) of the Act even though all of the heirs did not receive personal notice. In the second instance of alleged error, the tax records listed a bank as owner of a certain parcel of land. The bank was duly notified. The fact that an individual was purchasing the land by contract for deed from the bank is irrelevant when that individual was not included in the tax records. Accordingly, K/C was not statutorily required to provide notice to the purchaser. The same holds true for the third instance of alleged improper notice. The fact that an individual may be living on neighboring property but is not listed in the tax records does not entitle him to notice under section 39.2(b). The Association's mere assertion that this individual owns the land is insufficient in and of itself to carry the burden of proving the Commissioners lacked jurisdiction to rule on K/C's application. Generally, as long as notice is in compliance with the statute and places those potentially interested persons on inquiry, it is sufficient to confer jurisdiction on the county board. (See *Tate v. Pollution Control Board* (1989), 188 Ill. App. 3d 994, 1019, 544 N.E.2d 1176, 1193.) The PCB committed no error in dismissing the Association's arguments pertaining to notice.

The Association's primary contention on appeal is that the proposed facility fails to meet three of the six statutory criteria required before site-suitability approval can be given. The Association therefore argues the decision of the Commissioners and PCB granting approval is against the manifest weight of the evidence.

■■■ In order to protect against arbitrary action on the part of a county board, section 39.2(a) of the Act sets forth six criteria which must be met before approval of new pollution control facilities can be given. (See Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(a); see also *Clutts v. Beasley* (1989), 185 Ill. App. 3d 543, 545, 541 N.E.2d 844, 845; *Waste Management of Illinois, Inc. v. Pollution Control Board* (1987), 160 Ill. App. 3d 434, 443, 513 N.E.2d 592, 597-98.) These six criteria are:

"(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain on [*sic*] the site is flood-proofed;

(v) the plan of operations for the facility is designed to mini-

mize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows; ***." (Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(a).)

The Association takes issue with the findings pertaining to criteria (i), (ii) and (v). We first note that in order to prevail here, the Association must demonstrate the PCB's decision is contrary to the manifest weight of the evidence. (See, *e.g., Clutts*, 185 Ill. App. 3d at 546, 541 N.E.2d at 846; *Waste Management*, 160 Ill. App. 3d at 441-42, 513 N.E.2d at 596-97; *Willowbrook Motel, Partnership v. Pollution Control Board* (1985), 135 Ill. App. 3d 343, 349, 481 N.E.2d 1032, 1036.) That a different conclusion may be reasonable is insufficient; the opposite conclusion must be clearly evident, plain or indisputable. (*Tate*, 188 Ill. App. 3d at 1022, 544 N.E.2d at 1195; *Willowbrook*, 135 Ill. App. 3d at 349, 481 N.E.2d at 1036.) Furthermore, as a reviewing court we will not reweigh conflicting testimony or assess the credibility of witnesses. *Tate*, 188 Ill. App. 3d at 1022, 544 N.E.2d at 1195; *Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 1030-31, 530 N.E.2d 682, 689.

■ Specifically, with respect to criteria (i), the Association argues K/C failed to establish its landfill is necessary to accommodate the needs of the area intended to be served when the landfill in Lawrence County will accept Wabash County waste and has an 8- to 10-year lifespan which can be expanded to 60 years. Necessary under section 39.2, however, does not mean absolute necessity, but rather expedient, indicating some urgency, or reasonably convenient. (See *Clutts*, 185 Ill. App. 3d at 546, 541 N.E.2d at 846; *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 123 Ill. App. 3d 1075, 1084, 463 N.E.2d 969, 976; see also *Tate*, 188 Ill. App. 3d at 1023, 544 N.E.2d at 1195.) In other words, the applicant must show his landfill is reasonably required by the waste needs of the area, taking into consideration its waste production and disposal capabilities. (*Waste Management*, 175 Ill. App. 3d at 1031, 530 N.E.2d at 689; *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 122 Ill. App. 3d 639, 645, 461 N.E.2d 542, 546.) Furthermore, the applicant does not have to prove every other potential landfill site in the region is unsuitable. *E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 609, 451 N.E.2d 555, 573, *aff'd* (1985), 107 Ill. 2d 33, 481 N.E.2d 664.

■ Contrary to the Association's assertions, there is evidence on the record before us which demonstrates a need for a landfill in Wabash County. Wabash County presently has no landfills. The nearest

landfill in Lawrence County has a short life-span and several environmental problems. While there is some evidence on the record the life-span of the Lawrence County landfill could be expanded to 60 years, the owner of the landfill had not even purchased the necessary land to do so by the time of the hearing. Other evidence, on the other hand, revealed poor operation of landfills in neighboring counties and increased costs involved in transporting and disposing of Wabash County waste in these landfills. We simply cannot say the PCB erred in determining there was sufficient evidence in the record to support the Commissioners' conclusion the proposed landfill is necessary to ensure the county's waste will be disposed of in an environmentally sound and cost-efficient manner. See *Tate*, 188 Ill. App. 3d at 1023-24, 544 N.E.2d at 1196.

■ The Association next points out K/C failed to establish its proposed facility would be operated so as to protect the public health, safety and welfare. According to the Association's experts, the soil of the proposed site has high permeability with little clay to retain leachate. Additionally, abandoned wells cover the area, and water in general rests in close proximity to the surface of the landfill. These factors in conjunction with an allegedly improperly designed leachate collection system ensure contamination, according to the Association. The comprehensive investigation of the site suitability of the land conducted in 1986, however, concluded the geology of the site was suitable for a nonhazardous municipal waste sanitary landfill because, in part, of its very thick underlying layer of shale. The investigation also revealed that water wells in the area were relatively deep and would not be affected adversely by the proposed landfill. K/C's witnesses also testified the design of the proposed landfill complied with or exceeded the landfill standards of the Act.

Obviously the experts disagreed as to the site suitability of the proposed landfill as it relates to public health, safety and welfare. Merely because there is some evidence on the record which, if accepted, would support a contrary conclusion does not mean we will substitute our judgment for that of the Commissioners or the PCB. (*Tate*, 188 Ill. App. 3d at 1026, 544 N.E.2d at 1197.) The proposed landfill was designed in compliance with the standards set by the Illinois Environmental Protection Agency for nonhazardous waste disposal. We cannot say such compliance does not satisfy the second criterion of the statute. (*Clutts*, 185 Ill. App. 3d at 546, 541 N.E.2d at 846.) While it is not abundantly clear from the record that damage from migrating leachate is not impossible, it is clear that it is not against the manifest weight of the evidence to find the water supplies are adequately protected.

*(Town of Ottawa v. Pollution Control Board* (1984), 129 Ill. App. 3d 121, 127, 472 N.E.2d 150, 154; see also *Clutts*, 185 Ill. App. 3d at 546, 541 N.E.2d at 846.) We further note the Association experts did not conduct their own tests or studies of the proposed site, thereby weakening the Association's position with respect to this issue. (See *Town of Ottawa*, 129 Ill. App. 3d at 127, 472 N.E.2d at 154.) Again, we find no error in the PCB's affirming the Commissioners' approval of K/C's application.

■ With respect to the fifth criterion, the Association contends K/C failed to establish its plan of operations is designed to minimize the danger to the surrounding area from operational accidents. The key, here, however is *minimize.* There is no requirement that the applicant guarantee no accidents will occur, for it is virtually impossible to eliminate all problems. (See *Tate*, 188 Ill. App. 3d at 1024, 544 N.E.2d at 1196.) K/C's statement of proposed operations begins with the screening of materials entering the site to ensure that the quantity and quality of the load is known, spillage is contained and any waste likely to cause landfill fires is refused. It ends with the detailing of procedures to be followed in the event of an accident. The evidence is more than sufficient to support the findings of the Commissioners and of the PCB that K/C's design meets the applicable statutory requirements.

We are mindful of the Association's concerns, but we cannot say in this instance the decisions of the Commissioners and the PCB are against the manifest weight of the evidence. Our determination, however, by no means concludes the matter. This is but the first step in a long process. The Illinois Environmental Protection Agency still must approve K/C's application and issue an operating permit. And, once that has occurred, K/C will be subject to regular inspections and ongoing review of its facility in operation, thereby ensuring additional environmental safeguards. (See *Tate*, 188 Ill. App. 3d at 1026, 544 N.E.2d at 1197.) The existence of strong public opposition alone cannot invalidate the decision of either the Commissioners or the PCB. See *Waste Management*, 123 Ill. App. 3d at 1081, 463 N.E.2d at 974.

For the aforementioned reasons, we affirm the decision of the Pollution Control Board affirming the approval granted by the Commissioners with respect to K/C's application for a proposed regional pollution control facility in Wabash County.

Affirmed.

WELCH and CHAPMAN, JJ., concur.