623 N.E.2d 1058 (1993)
253 Ill. App.3d 389
191 Ill.Dec. 468
Richard WORTHEN, Clarence Bohm, Harry Parker, George Arnold, Charles Criswell, Thomas Gibson, City of Edwardsville, City of Troy, Village of Maryville, Village of Glen Carbon, Save All Farmland and Environmental Resources, and Madison County Conservation Alliance, Petitioners-Appellants,
v.
VILLAGE OF ROXANA, Laidlaw Waste Systems (Madison), Inc., and The Pollution Control Board, Respondents-Appellees.
No. 5-91-0807.
Appellate Court of Illinois, Fifth District.
November 23, 1993.
*1059 George J. Moran, Sr., Callahan & Moran, P.C., Trenton, for petitioners-appellants.
Brian Konzen, Lueders, Robertson & Konzen, Granite City, for Laidlaw Waste Systems (Madison), Inc.
Roland W. Burris, Atty. Gen., Rosalyn B. Kaplan, Sol. Gen., Chicago (Mark E. Wilson, Asst. Atty. Gen., of counsel), for The Illinois Pollution Control Bd.
Merle C. Bassett, Bassett Law Offices, P.C., Wood River, for Village of Roxana no brief filed.
Justice WILLIAM A. LEWIS delivered the opinion of the court:
This case is on appeal from a decision of the Illinois Pollution Control Board (PCB) affirming the decision of the Village of Roxana Board of Trustees (Village) which granted site approval to Laidlaw Waste Systems (Madison), Inc. (Laidlaw), for expansion of its Cahokia Road landfill. Petitioners appeal to this court pursuant to the provisions of section 41(a) of the Illinois Environmental Protection Act (Act). (Ill. Rev.Stat.1991, ch. 111½, par. 1041(a) (now 415 ILCS 5/41(a) (West 1992)).) The issues which we consider in this appeal are: (1) whether this court lacks jurisdiction because *1060 the petitioners failed to name the PCB as a party in its original petition for review to this court; (2) whether petitioners have exhausted their administrative remedies; and (3) whether the evidence presented below supports the PCB's order approving the expansion of the landfill. For the reasons stated, we affirm the order of the PCB.
The PCB issued its order affirming the Village's grant of approval to Laidlaw to expand the Cahokia Road landfill on October 10, 1991. On November 14, 1991, petitioners filed their petition for review of the PCB order, naming only the Village and Laidlaw as respondents. However, petitioners served the PCB with a copy of the petition for review at the same time as they served the Village and Laidlaw. The PCB does not dispute the fact that it was served with the petition for review and, therefore, had actual notice of this appeal. On December 16, 1991, Laidlaw filed a motion to dismiss the appeal for failure to name the PCB as a party in the petition for review, and on the same date, petitioners filed a motion for leave to amend its petition for review. Petitioner's motion to amend was granted by this court on March 25, 1992. Even though petitioners have been granted leave to amend, we now consider the merits of the argument that failure to name the PCB as a party is a fatal defect depriving this court of all jurisdiction to consider this appeal.
We first note that appellate review of administrative decisions, including decisions of the PCB, is an exercise of special statutory jurisdiction, and as such, jurisdiction is strictly limited to the language of the statutes conferring jurisdiction. (Fredman Brothers Furniture Co. v. Department of Revenue (1985), 109 Ill.2d 202, 93 Ill.Dec. 360, 486 N.E.2d 893.) Unless the parties strictly and completely follow the statutory procedures for initially bringing the case before the court's jurisdiction, the court is without any jurisdiction to decide the case. Fredman Brothers Furniture Co. v. Department of Revenue (1985), 109 Ill.2d 202, 93 Ill.Dec. 360, 486 N.E.2d 893.
As stated, the Act permits judicial review of PCB decisions via section 41(a), which requires that the petitioner file a petition for review within 35 days after entry of the order or other final action complained of. (Ill.Rev.Stat.1991, ch. 111½, par. 1041(a) (now 415 ILCS 5/41(a) (West 1992)).) Under section 41(a), therefore, petitioners completed the first jurisdictional step by filing their petition for review on November 14, 1991, which was within 35 days after the PCB decision was issued.
Nevertheless, Supreme Court Rule 335 sets up additional requirements to be met before the appellate court is vested with jurisdiction to review an order of the PCB.
"The petition for review shall be filed in the Appellate Court and shall specify the parties seeking review and shall designate the respondent and the order or part thereof to be reviewed. The agency and all other parties of record shall be named respondents." (134 Ill.2d R. 335.)
Thus, under the clear and unambiguous words of Rule 335, the agency, in this case the PCB, must be named as a respondent in the petition for review. However, the exact parameters of what is required under Rule 335 is the subject of a growing body of case law.
The PCB argues that the ruling in Lockett v. Chicago Police Board (1990), 133 Ill.2d 349, 140 Ill.Dec. 394, 549 N.E.2d 1266, requires us to find that this court is without jurisdiction to decide the instant appeal. We disagree. While several appellate cases have held that Lockett imposes a jurisdictional requirement that all necessary parties must be named in the petition for review within the applicable statutory period (Marozas v. Board of Fire & Police Commissioners (1991), 222 Ill.App.3d 781, 165 Ill.Dec. 223, 584 N.E.2d 402; Spicer, Inc. v. Regional Board of School Trustees (1991), 212 Ill.App.3d 16, 156 Ill.Dec. 202, 570 N.E.2d 678; Strang v. Department of Transportation (1990), 206 Ill.App.3d 368, 151 Ill.Dec. 284, 564 N.E.2d 261), to our knowledge, no case has decided the specific question presented by this appeal. The question we must decide herein is whether *1061 the failure to name a necessary party in the caption of the petition for review is a fatal defect where the unnamed party is properly served with a copy of the petition for review and petitioner, without delay, requests leave to amend the petition for review to add the unnamed party to the caption.
Although the supreme court has not yet ruled on the specific issue under consideration herein, we believe that Lockett and its progeny provide a framework that supports our decision. Lockett established that failure to name and serve a necessary party in a judicial review of an administrative decision is a fatal defect that cannot be cured by amendment absent a showing that the petitioner made a timely and good faith effort to both name and serve all parties of record in the administrative proceeding but had failed in that effort due to some problem not within the petitioner's control. (Lockett v. Chicago Police Board (1990), 133 Ill.2d 349, 140 Ill.Dec. 394, 549 N.E.2d 1266.) The ruling in Lockett was based upon section 3-107 of the Administrative Review Law (Ill.Rev.Stat.1991, ch. 110, par. 3-107 (now 735 ILCS 5/3-107 (West 1992))), which does not apply to cases such as this decided under Rule 335. (County of Cook, Cermak Health Services v. Illinois State Local Labor Relations Board (1991), 144 Ill.2d 326, 162 Ill.Dec. 52, 579 N.E.2d 866.) Nevertheless, we feel that the express words of Rule 335 requiring that "[t]he agency and all other parties of record shall be named respondents" and that the "petitioner shall serve the petition for review on the agency and on all other parties of record to the proceeding before the agency" are sufficiently similar to section 3-107 of the Administrative Review Law that the same rationale applies to naming and serving parties under Rule 335. 134 Ill.2d R. 335(a), (b); Ill.Rev.Stat.1991, ch. 110, par. 3-107 (now 735 ILCS 5/3-107 (West 1992)).
Based upon the facts presented in this appeal, and only these facts, we hold that because petitioners timely filed their petition for review and timely served the PCB with a copy of the petition for review, petitioners have demonstrated a sufficient good faith effort to comply with the rules, as required by our supreme court. (Lockett v. Chicago Police Board (1990), 133 Ill.2d 349, 140 Ill.Dec. 394, 549 N.E.2d 1266.) Courts, as a general rule, should not find hypertechnical excuses to avoid deciding the merits of disputes, when no delay or harm was caused by the technical violation to any party. This especially should be the case where an administrative agency, which is only marginally involved in an appeal and which is not harmed, delayed, or impacted by the technical violation, is seeking dismissal of the appeal. We, therefore, do not find that what appears to be a clerical error in failing to add the PCB's name to the caption of the petition for review, where the PCB was timely served with a copy of the petition for review and where there was a timely motion to add the PCB to the caption of the petition, is a defect that justifies this court finding that it is without jurisdiction.
The next issue is whether petitioners have exhausted their administrative remedies, since they did not request the PCB to reconsider its ruling of October 10, 1991, but filed their petition for review on November 14, 1991, instead. Although the PCB forcefully argues that petitioners have not exhausted their administrative remedies, recent appellate decisions hold otherwise on the same issue.
In the third district case of Strube v. Pollution Control Board (1993), 242 Ill. App.3d 822, 182 Ill.Dec. 848, 610 N.E.2d 717, as in the present case, the PCB alleged that the petitioners' failure to request a rehearing constituted a failure to exhaust administrative remedies and cited the Illinois Supreme Court case of Castaneda v. Illinois Human Rights Comm'n (1989), 132 Ill.2d 304, 138 Ill.Dec. 270, 547 N.E.2d 437, as authority for the contention. The court in Strube reasoned that the Illinois Human Rights Commission procedure that applied in Castaneda is distinguishable from procedures applicable to the Pollution Control Board. Under the Human Rights Commission, cases are first reviewed by a partial, three-member commission. After the three-member commission renders its *1062 decision, a complainant can obtain review by the full nine-member panel upon request for reconsideration. Cases reviewed by the PCB, however, are initially reviewed by the full panel. The court in Strube reasoned that requiring a rehearing by the same panel that first decided the case would constitute a waste of the PCB's valuable time and resources. Strube v. Pollution Control Board (1993), 242 Ill.App.3d 822, 182 Ill.Dec. 848, 610 N.E.2d 717.
Since the decision in Strube was filed, the fourth district has followed the same reasoning in Grigoleit Co. v. Pollution Control Board (1993), 245 Ill.App.3d 337, 184 Ill.Dec. 344, 613 N.E.2d 371, and the third district has followed Strube again in Land & Lakes Co. v. Pollution Control Board (1993), 245 Ill.App.3d 631, 186 Ill. Dec. 396, 616 N.E.2d 349. We follow Strube as well and hold that petitioners herein were not required to request a rehearing before the PCB before filing their petition for review and that they have exhausted their administrative remedies.
Turning to the merits of the case, petitioners first argue that the PCB erred in reviewing the case under the manifest weight of the evidence standard. Their argument is based upon their claim that the ultimate facts presented to the Village were not disputed and that the questions presented were entirely questions of law. Petitioners argue that since the facts were not disputed, the manifest weight of evidence standard had no application to the PCB review. The PCB considered this same issue and found that "contrary to petitioners' assertions, * * * many of the areas of dispute involve questions of fact or mixed questions of fact and law." We agree. Without reiterating all of the evidence presented below, which we do not feel is necessary to a full understanding of our decision herein, suffice it to say that the ultimate facts of the case presented to the Village were indeed disputed. Laidlaw presented evidence that its proposal met all statutory criteria, and petitioners presented evidence, which if believed, would tend to indicate that some statutory criteria were not met. Because the facts are disputed, the appropriate standard of review for this court and the PCB is whether the manifest weight of the evidence supports the lower body's decision. Wabash & Lawrence Counties Taxpayers & Water Drinkers Association v. Pollution Control Board (1990), 198 Ill.App.3d 388, 144 Ill.Dec. 562, 555 N.E.2d 1081 (Wabash & Lawrence Counties Taxpayers).
At the local level, the approval process for landfills is controlled by section 39.2 of the Act. (Ill.Rev.Stat.1991, ch. 111½, par. 1039.2 (now 415 ILCS 5/39.2 (West 1992)).) Local authorities, such as the Village, are required to consider the nine factors listed in section 39.2(a), and unless all relevant criteria are met, approval cannot be granted to the landfill applicant. (Ill.Rev.Stat. 1991, ch. 111½, par. 1039.2(a) (now 415 ILCS 5/39.2(a) (West 1992)).) The Village found that Laidlaw's application met all relevant criteria and granted the approval. When the Village's decision was appealed to the PCB, the PCB was required to decide if the Village's decision was against the manifest weight of the evidence. (Waste Management of Illinois, Inc. v. Pollution Control Board (1987), 160 Ill.App.3d 434, 112 Ill.Dec. 178, 513 N.E.2d 592.) A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident, plain, or indisputable. (Wabash & Lawrence Counties Taxpayers (1990), 198 Ill.App.3d 388, 144 Ill.Dec. 562, 555 N.E.2d 1081.) On review, neither the PCB nor this court is allowed to reweigh the evidence or reassess the credibility of the witnesses. Fairview Area Citizens Taskforce v. Pollution Control Board (1990), 198 Ill.App.3d 541, 144 Ill.Dec. 659, 555 N.E.2d 1178; Wabash & Lawrence Counties Taxpayers (1990), 198 Ill.App.3d 388, 144 Ill.Dec. 562, 555 N.E.2d 1081.
Petitioners challenge two of the nine statutory criteria of section 39.2. Petitioners first challenge the Village's finding that the proposed facility is necessary to accommodate the waste needs of the area it is intended to serve. (Ill.Rev.Stat. 1991, ch. 111½, par. 1039.2(a)(1) (now 415 ILCS 5/39.2(a)(i) (West 1992)).) Within this challenge, petitioners first argue that Laidlaw's *1063 proof of need was defective because its definition of service area was faulty. Laidlaw presented evidence that its proposed service area was limited to three counties, Madison, St. Clair, and Monroe. However, Laidlaw entered into an agreement with the Village which provided that Laidlaw would limit the waste it accepted to a 100-mile radius, rather than accept waste from any locality, as it could have done absent the agreement with the Village. Petitioners argue that because the evidence clearly showed that Laidlaw could accept waste from an area greater than just the three counties, the service area was greater than the three counties. Petitioners further argue that since Laidlaw only proved need for the three counties and not the entire 100-mile radius, therefore, Laidlaw failed to prove that the landfill expansion was necessary to the 100-mileradius service area.
The PCB held that the evidence established that Laidlaw had consistently defined the intended service area as only the three counties, that it had never defined the service area to include the entire 100-mileradius, and that the law provides that it is the applicant alone that defines the intended service area. (Metropolitan Waste Systems, Inc. v. Pollution Control Board (1990), 201 Ill.App.3d 51, 146 Ill.Dec. 822, 558 N.E.2d 785.) We cannot find the argument postulated by petitioners to be so clearly evident, plain, or indisputable that the PCB decision on this issue can be overturned. (Wabash & Lawrence Counties Taxpayers (1990), 198 Ill.App.3d 388, 144 Ill.Dec. 562, 555 N.E.2d 1081.) On the contrary, the record shows that Laidlaw clearly and consistently defined its service area as only the three counties. Laidlaw's evidence regarding the need for the landfill expansion consisted of studies showing that area landfills would be filled to capacity by the mid-1990's. The three counties need more landfill capacity regardless of whether Laidlaw does or does not accept waste from outside the three counties. Petitioners cite no authority for their contention that landfills are prohibited under the Act from accepting waste from outside their defined service area. We decline to adopt such a rule in the absence of any legislation.
Petitioners next challenge the PCB's ruling that the proposed facility does not conflict with the county's solid waste management plan. Section 39.2(a)(viii) provides that the local authority must determine "if the facility is to be located in a county where the county board has adopted a solid waste management plan * * *, [and, if so, that] the facility is consistent with that plan." (Ill.Rev.Stat.1991, ch. 111½, par. 1039.2(a)(viii) (now 415 ILCS 5/39.2(a)(viii) (West 1992)).) The evidence was undisputed that the Village was located in Madison County and that Madison County was required to develop a solid waste management plan. However, the evidence was anything but clear as to whether or not Madison County had actually adopted and approved a final version of a solid waste management plan. In fact, the PCB found that the evidence on this issue was so unclear that it could not determine whether the county had actually adopted a final plan. However, the PCB reviewed the Village's finding without making an express ruling as to whether the county had adopted a final plan and ruled that the Village's finding that the facility would be consistent with any plan most likely to be adopted was not against the manifest weight of the evidence.
Petitioners' main argument that the facility will be inconsistent with the county's plan is based upon evidence presented by petitioners that the county's plan required a moratorium on new landfills or expansions of old landfills for a period of either three or five years after adoption of the plan. However, without going into all of the details of the plan, suffice it to say that even petitioners' witness did not testify that the county's plan expressly provided for such a moratorium. Petitioners' witness, although the person in charge of drafting the county plan, merely stated that he interpreted the county's underlying intention as requiring a waiting period before opening or expanding landfills. The Village was free to interpret the words of the county plan on their own, since petitioners' *1064 witness was not a person in authority in the county and the evidence was clear that the county was not required to follow his interpretation of the plan. The PCB found that there was sufficient evidence in the record to support the Village's decision that the proposed facility is consistent with the county plan and that the Village's decision was not against the manifest weight of the evidence. We agree. That the Village could have drawn different conclusions from the conflicting evidence regarding the terms of the county plan is not a basis upon which to reverse the PCB's decision. File v. D & L Landfill, Inc. (1991), 219 Ill.App.3d 897, 162 Ill.Dec. 414, 579 N.E.2d 1228.
Petitioners' final argument is that the siting approval by the Village conflicts with the Solid Waste Planning and Recycling Act. (Ill.Rev.Stat.1991, ch. 85, par. 5951 et seq. (now 415 ILCS 15/1 et seq. (West 1992)).) Petitioners argue that the language of the Solid Waste Planning and Recycling Act precludes importation of substantial amounts of waste from outside those counties required under the act to adopt a solid waste management plan. Petitioners support their proposition on the word "generated" found in section 4 of the Solid Waste Planning and Recycling Act, which provides as follows:
"By March 1, 1991, each county with a population of 100,000 or more * * * shall submit to the Agency an officially adopted plan for the management of municipal waste generated within its boundaries." (Emphasis added.) (Ill.Rev.Stat. 1991, ch. 85, par. 5954 (now 415 ILCS 15/4 (West 1992).)
Although petitioners quote from several other statutes relating to solid waste management, they clearly place primary emphasis upon the above-quoted section. Basically, petitioners argue that a county required to develop a plan for solid waste management cannot allow a new or expanding landfill to accept waste from outside its borders. We are not persuaded. That counties are now required to plan for the management of their own waste does not prevent them from allowing new or expanded landfills that are otherwise properly constructed and operated simply because those landfills accept waste from outside the county.
We find that the PCB order affirming the Village's approval of Laidlaw's request to expand the Cahokia Road landfill is not against the manifest weight of the evidence. For all of the reasons stated, we affirm the October 10, 1991, PCB decision.
Affirmed.
MAAG and GOLDENHERSH, JJ., concur.