NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241422-U

NO. 4-24-1422

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 21, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| LAKESHORE RECYCLING SYSTEMS, LLC, | ) | Appeal from the |
|     Petitioner-Appellant, | ) | Pollution Control Board |
| v. | ) | |
| POLLUTION CONTROL BOARD, | ) | PCB 24-065 |
| AMERICAN DISPOSAL SERVICES, INC., d/b/a | ) | |
| REPUBLIC SERVICES OF BLOOMINGTON, | ) | |
| McLEAN COUNTY, ILLINOIS and McLEAN | ) | |
| COUNTY BOARD, | ) | |
|     Respondents-Appellees. | ) | |

JUSTICE VANCIL delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed the decision of the Illinois Pollution Control Board, finding that the petitioner failed to send proper notice of its intent to request approval for siting of a new solid waste transfer facility to all property owners within 250 feet of the proposed site.

¶ 2    Petitioner, Lakeshore Recycling Systems, LLC (LRS), sought approval for the site of a new waste transfer facility in McLean County. The McLean County Board (County Board) approved the proposed site, but the Pollution Control Board (PCB) vacated that decision, finding LRS failed to notify all property owners within 250 feet of the lot lines of the proposed site, as required by section 39.2(b) of the Illinois Environmental Protection Act (IEPA) (415 ILCS 5/39.2(b) (West 2024)). LRS appeals the PCB's decision, arguing that the PCB misinterpreted section 39.2(b) and relied on incorrect property boundaries for the proposed facility.

¶ 3     We affirm.

¶ 4                         I. BACKGROUND

¶ 5     LRS is a waste management and recycling company based in Illinois. On August 18, 2023, LRS applied to the McLean County Board for siting approval for its proposed "Henson Recycling Campus [(Campus)] Transfer Station" (the Facility), in unincorporated McLean County. It described the proposed station as "a state-of-the-practice facility where loads of municipal solid waste (MSW) from collection vehicles will be consolidated into larger loads for transport to a permitted landfill." The Facility would also consolidate single-stream recyclables to transport them to material recovery facilities. The application stated, "The proposed approximately 3.09-acre [Facility] will be located within and complement the existing operations at the approximately 42-acre [Campus]." The application included a legal description of the proposed 3.09-acre Facility site.

¶ 6        The record includes a real estate impact study, which contained the following diagram.



¶ 7        Respondent, Republic Services, Inc. (Republic), another waste management company that operates in McLean County, objected to LRS's application. It claimed that the

County Board lacked jurisdiction, because LRS failed to serve notice of its intent to submit its application on the owner of each property within 250 feet of the lot lines of the proposed site, as required by section 39.2(b) of the IEPA. Specifically, Republic claimed that the relevant lot lines were the boundaries of the entire 42-acre Campus, not the smaller 3.09-acre area. Republic contended that a manufactured home community was located within 250 feet of the boundaries of the Campus and LRS did not notify the owners of this property. Republic claimed that McLean County's authentic tax records did not recognize any separate lot that corresponded to the location of LRS's proposed 3.09-acre Facility. Instead, Republic claimed that the only legally recognized lot lines were those of the entire Campus. LRS had not served notice on all property owners within 250 feet of the boundaries of the Campus, and Republic argued that LRS had therefore not complied with the notice requirement in section 39.2.

¶ 8        On February 14, 2024, the McLean County Board approved LRS's application. It accepted the "legal description of the Facility set forth in the application." Based on this description, the McLean County Board found LRS had complied with section 39.2's notice requirements. After finding other statutory requirements satisfied, the County Board approved the application with certain conditions.

¶ 9        On March 14, 2024, Republic filed a petition with the PCB for review of the County Board's decision, largely repeating the arguments it made before the County Board itself. The PCB held a hearing on July 29, 2024. Six witnesses testified at the hearing, including the program administrator for the McLean County recording office, the McLean County treasurer and county collector, a McLean County Board member, the Geographic Information System specialist for the McLean County Supervisor of Assessments, a land surveyor, and the Chair of the McLean County Board.

- 4 -

¶ 10         The PCB vacated the McLean County Board's decision. Based on the parties' filings and the testimony presented at the hearing, it determined that LRS had not complied with the notice requirement in section 39.2.

¶ 11         The PCB found that the McLean County Zoning Department approved a preliminary plan to subdivide the original parcel of land, corresponding to the Campus, in February 2023. The County Recorder of Deeds recorded a new Assessment Plat on August 17, 2023. That same day, the County Supervisor of Assessments received a Parcel Control Change Request, which is used to record changes in parcels. The request was entered into Devnet, the county's system for tracking parcels, on January 18, 2024. On December 18, 2023, the 42-acre parcel was split apart in the Assessor's Office records, with the 3.09-acre proposed Facility site as one of the newly created parcels. Finally, the PCB found that LRS sent notices to nearby property owners on July 25, 2023, but it did not notify the owners of the manufactured home community located directly west of the Campus.

¶ 12         The PCB relied on McLean County's authentic tax records to determine the lot lines. It concluded that the Campus was the relevant property, the manufactured home park was within 250 feet of the lot line, and LRS failed to serve notice on the owner of the park. Citing the plain language of section 39.2(b) and the appellate court's decision in *Environmental Control Systems, Inc. v. Long*, 301 Ill. App. 3d 612, 623 (1998), the PCB found, "an applicant cannot themselves 'define' or decide what the subject property is under Section 39.2(b), and instead must look to the authentic tax records of the county where the facility is located." It added that the Assessment Plat was created *after* the notice was sent. Similarly, the Parcel Control Request form was not completed and the parcel change was not mapped in Devnet until after the notice deadline. Therefore, LRS could not rely on these documents to establish the Facility's existence

in the authentic tax records at the time of the notice. Based on the inadequate notice, the PCB found that the County Board lacked jurisdiction. See *Ogle County Board v. Pollution Control Board*, 272 Ill. App. 3d 184 (1995).

¶ 13          This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15          LRS appeals the PCB's decision. We review questions of law, including questions of statutory interpretation, *de novo*. *Waste Management of Illinois, Inc., v. Illinois Pollution Control Board*, 356 Ill. App. 3d 229, 232 (2005). "[T]he interpretation of a statute by the agency charged with its administration is generally given deference; but it is not binding and, if erroneous, will be rejected." *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590, 595 (2005). When the facts are not in dispute, whether the County Board had jurisdiction is also a question of law. *Waste Management of Illinois*, 356 Ill. App. 3d at 232.

¶ 16          Here, the parties do not dispute the PCB's findings of fact. Specifically, the parties agree that LRS did not send notice of its application to the owner of the manufactured home community located to the west of the Campus, and therefore, LRS did not notify the owner of every property within 250 feet of the 42-acre Campus. However, LRS challenges the PCB determination that the relevant lot lines were those of the entire Campus, not just the Facility and LRS's notices were therefore insufficient.

¶ 17          The PCB relied on section 39.2(b) of the IEPA, which provides;

               "(b) No later than 14 days before the date on which the county board or

               governing body of the municipality receives a request for site approval, the

               applicant shall cause written notice of such request to be served either in person or

               by registered mail, return receipt requested, on the owners of all property within

- 6 -

the subject area not solely owned by the applicant, and on the owners of all property within 250 feet in each direction of the *lot line of the subject property*, said owners being such persons or entities which appear from the authentic tax records of the County in which such facility is to be located; provided, that the number of all feet occupied by all public roads, streets, alleys and other public ways shall be excluded in computing the 250 feet requirement; provided further, that in no event shall this requirement exceed 400 feet, including public streets, alleys and other public ways." (Emphasis added.) 415 ILCS 5/39.2(b) (West 2024).

¶ 18 The determinative question is how to ascertain the "lot line of the subject property." The PCB concluded that an applicant cannot define the lot lines of the proposed property itself. Instead, according to the PCB, the boundaries of the subject property are set by the "authentic tax records of the County in which such facility is to be located." *Id.* According to the PCB, because the proposed 3.09-acre Facility did not exist as a separate lot in McLean County's authentic tax records until after LRS sent its notices, the 3.09-acre area could not define the relevant lot lines. Instead, the county's authentic tax records acknowledged the entire Campus as one property, and the Campus provided the relevant lot lines for section 39.2's notice requirement.

¶ 19 LRS argues that the PCB erred. The text of section 39.2 specifies only, "[S]aid *owners* being such persons or entities which appear from the authentic tax records of the County in which such facility is to be located." (Emphasis added.) *Id.* LRS contends that section 39.2 requires applicants to consult the local authentic tax records to determine only who owns the neighboring properties, but it does not define the boundaries of the subject property using those

tax records. Instead, LRS contends that the "subject property" referred to in section 39.2 is "the *property* that is the *subject* of the siting application and for which, if siting is approved, a development permit will be sought." (Emphases original.) LRS insists that the applicant defines this subject property, not any tax records. Here, LRS's initial application defined the boundaries of the proposed lot as the 3.09-acre Facility. LRS adds that the Assessment Plat and preliminary subdivision plan recorded with the McLean County Recorder's Office also included these property lines.

¶ 20       LRS contends that the PCB's reading improperly adds new requirements into the statute. See *U.S. Steel Corp. v. Illinois Pollution Control Board*, 384 Ill. App. 3d 457, 463 (2008) (stating that courts "may not depart from the statute's plain language by reading into it exceptions, limitations, or conditions not expressed therein"). The text of section 39.2 does not state that the authentic tax records must identify the property's lot lines, nor does it state that those records must exist before the notice requirement is satisfied. LRS argues we should not add these requirements to the statute.

¶ 21       Respondents urge us to affirm the PCB's decision. Republic contends that even if the text of section 39.2 explicitly refers to authentic tax records only in defining "owners," we should read the rest of this section in this context. See *People v. Clark*, 2019 IL 122891, ¶ 20 ("A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation."). The State insists that because the 3.09-acre Facility did not appear in McLean County's authentic tax records until after LRS sent its notices, the property lines of the entire Campus must be the relevant lot lines.

¶ 22       We find the text of section 39.2 ambiguous. Section 39.2 does not define the phrases "subject property" or "lot line." As LRS argues, section 39.2 explicitly invokes tax

- 8 -

records only in reference to the "owners" of the neighboring properties. It does not state explicitly that the tax records determine the boundaries of the subject property. However, the text also does not explicitly support LRS's contention that each applicant defines the boundaries of the subject property. If the text of section 39.2 does not conclusively resolve this issue in respondents' favor, neither does it resolve the issue in LRS's favor.

¶ 23     In this context, we note that courts afford some deference to an agency's interpretations of the statutes it administers. See *Taddeo*, 216 Ill. 2d at 595. "A significant reason for this deference is that courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 153 (1983). Of course, we do not defer to the agency if we conclude that its decision is erroneous. See *Taddeo*, 216 Ill. 2d at 595.

¶ 24     We do not conclude that the PCB erred. Section 39.2 does not invoke the applicant's definition of the site at all. But its reference to "authentic tax records" provides useful context for defining the "lot lines." See *Clark*, 2019 IL 122891, ¶ 20; see also *Lehmann v. Revell*, 354 Ill. 262, 276 (1933) (finding no authority that provided a fixed definition for the term "lot," and instead, "courts always read and interpret it in connection with the context and the circumstances under which it is used"). Contrary to LRS's argument, the PCB's reading does not depart from the plain language of the statute by improperly adding new requirements to the statute. Indeed, section 39.2 creates a notice requirement explicitly. The phrases "lot lines" and "subject property" must have some definition, and the plain language of the statute is not conclusive.

¶ 25     The parties also discuss *Environmental Control Systems*, *Inc.*, 301 Ill. App. 3d 612. There, Environmental Control Systems (ECS) sought to develop a pollution control facility.

*Id.* at 614. It did not notify the owners of two properties within 250 feet of the lot on which the facility would be located. *Id.* at 622. It argued section 39.2 required only that it notify all the owners of property within 250 feet of the facility itself. *Id.* at 623. The appellate court rejected this claim, observing, "The language of the statute requires notification of owners of land within 250 feet of the *lot line*." (Emphasis in original.) *Id.* at 623 (citing Ill. Rev. Stat. 1989, ch. 111 ½, par. 1039.2(b)). The court added that the property's lot lines were recorded on the county's authentic tax records and assessor's map and the facility was located within one of the parcels. *Id.* The court found the phrase "lot line" in section 39.2 referred to the "greater parcel line," not the facility boundary, adding, "To conclude otherwise could result in abuse, with property owners in close proximity to a proposed [facility] not receiving notification because the applicant owns enough land surrounding the proposed [facility] to negate the 250-foot rule." *Id.*

¶ 26      Respondents argue the same reasoning applies here. As in *Environmental Control Systems*, LRS's proposed facility did not exist as a separate lot in the county's authentic tax records. Also like the applicant there, LRS improperly tried to measure the relevant boundaries based on only a small part of the property. Respondents urge us to find that the PCB's decision was consistent with *Environmental Control Systems*.

¶ 27      In attempting to distinguish *Environmental Control Systems*, LRS quotes the underlying PCB decision from that case to argue that ECS's original application defined the location boundaries using the larger area of the parcel on which the facility was located, instead of limiting the location boundaries to the facility itself. Indeed, ECS provided no separate legal description or specified lot lines for the facility itself. *See Madison County Conservation Alliance v. Madison County*, 1991 WL 143884, *3, 5 (Apr. 11, 1991) ("The description of the property, on which the regional pollution control facility will be located, refers to 210 acres.")

LRS insists that ECS could not define the lot lines expansively in its application, then define the lot lines restrictively for purposes of the notice requirement. According to LRS, this case is distinguishable because it has consistently claimed that the Facility sets the lot line, not the Campus. Moreover, the Facility has a distinct legal description and lot lines, included in the assessment plat and preliminary subdivision plan, unlike the proposed location in *Madison County Conservation Alliance*.

¶ 28        We do not find LRS's interpretation of *Environmental Control Systems* compelling. Even if the applicant in that case contradicted itself on the boundaries of its proposed lot, the appellate court in *Environmental Control Systems* did not rely on this. Instead, the court's reasoning related to the applicant's ability to define the boundaries without relying on lot lines, and specifically, those lot lines "detailed on the authentic tax records and assessor's map." *Environmental Control Systems*, 301 Ill. App. 3d at 623. Furthermore, LRS does not appear to claim that either the assessment plat or the preliminary subdivision plan were "authentic tax records," so we do not find that these documents establish the boundaries LRS relies on. See *Scott v. City of Chicago*, 2015 IL App (1st) 140570, ¶ 12 (explaining that a county's "authentic tax records" includes the records of county treasurer, clerk, and assessor).

¶ 29        Moreover, we find *Environmental Control Systems*'s reasoning compelling. As the court reasoned, if each applicant could define the boundaries of the subject property without reference to the authentic tax records, an applicant could avoid the notification requirement if the proposed facility was located within a lot that surrounded it by at least 250 feet on all sides. See *Environmental Control Systems*, 301 Ill. App. 3d at 623. The PCB reasonably did not read section 39.2 in this way.

¶ 30    LRS also relies on *Wabash & Lawrence County Taxpayers & Water Drinkers Ass'n v. Pollution Control Board*, 198 Ill. App. 3d 388 (1990). There, the applicant sought siting approval for a new facility on a 45-acre section of a larger parcel of land. *Id.* at 389. After the PCB approved the application, the petitioners appealed, arguing the applicant did not comply with section 39.2. The petitioner claimed that the applicant failed to notify all the heirs of the previous owner of the neighboring land. *Id.* at 390-91. The appellate court rejected this argument. It stated that "[u]nder section 39.2(b), notice is required to be sent to all owners of property within 250 feet of the property line of the proposed facility." *Id.* at 390. But the court added that section 39.2 defines "owners" based on the authentic tax records. Therefore, any heir whose name did not appear in the authentic tax records was not entitled to notice. *Id.* LRS cites *Wabash & Lawrence County Taxpayers* to support its argument that "authentic tax records" define only the owners of the neighboring property, not the lot lines.

¶ 31    *Wabash & Lawrence County Taxpayers* does not say this. Although the court there briefly noted that the proposed facility would be located "on a 45-acre portion of a 172-acre parcel of land," the boundaries of the subject property were simply not in dispute in that case. *Id.* at 389. The petitioner did not claim that the PCB accepted inappropriate boundaries for the subject property. The court the never discussed whether the proposed 45-acre facility site appeared in the authentic tax records, nor did it comment on the definition of the "lot lines" or "subject property." Instead, the court simply confirmed that the county's authentic tax records define the "owners." *Wabash & Lawrence County Taxpayers* does not compel a different result here.

¶ 32    In summary, we find the text of section 39.2 ambiguous. In deference to the PCB's reasonable interpretation of the statute and agreeing with the reasoning in *Environmental*

*Control Systems*, we find that section 39.2(b) required LRS to notify the owners of all properties within 250 feet of the lot lines of the Campus. It failed to do so. Therefore, the County Board lacked jurisdiction over LRS's application.

¶ 33                                  III. CONCLUSION

¶ 34          For the reasons stated, we affirm the PCB's decision.

¶ 35          Affirmed.